UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

ONEX CREDIT PARTNERS, LLC, a Delaware
Company,

                Plaintiff,

    v.

ATRIUM 5 LTD., an Underwriter at Lloyd's,
London individually, and in its capacity as
representative Underwriter at Lloyd's, London
for certain subscribing Underwriters at
Lloyd's, London who subscribed to Policy#
RC967307/127

                Defendant.

Civil Action No. 13-cv-5629
(DMC/JBC)

---

## MEMORANDUM OF LAW IN SUPPORT OF ATRIUM 5 LTD'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGEMENT, AND MOTION TO STRIKE CLAIM FOR ATTORNEY FEES

**Motion Date: February 18, 2014**

**Oral Argument Requested Pursuant to
Local Civil Rule 78.1**

MOUND COTTON WOLLAN
& GREENGRASS
30 A Vreeland Road, Suite 210
Florham Park, New Jersey 07932
973-494-0600
Attorneys for Defendant
**Atrium 5 LTD.**

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................1

II.   FACTUAL BACKGROUND.........................................................................3

      A.    THE POLICY ...............................................................................3

      B.    PLAINTIFF'S CLAIM FOR PERMANENT AND
            TOTAL DISABILITY BENEFITS ......................................................4

      C.    ONEX'S CLAIM INVESTIGATION AND DECISION ....................5

      D.    PLAINTIFF'S ACTION FOR BREACH OF
            CONTRACT AND BREACH OF COVENANT OF
            GOOD FAITH AND FAIR DEALING ............................................ 11

III.  LEGAL ANALYSIS.................................................................................. 12

      A.    STANDARD OF REVIEW.............................................................. 12

      B.    BREACH OF COVENANT OF GOOD FAITH AND
            FAIR DEALING: THE "FAIRLY DEBATABLE"
            STANDARD ....................................................................... 14

      C.    TARSIO V. PROVIDENT ................................................... 15

      D.    PLAINTIFF'S CLAIM FOR BREACH OF THE
            COVENANT OF GOOD FAITH AND FAIR DEALING
            MUST BE DISMISSED WITH PREJUDICE BECAUSE
            THE FAC DEPICTS A FACTUAL DISPUTE AS TO
            THE UNDERLYING CLAIM, THUS SATISFYING
            THE "FAIRLY DEBATABLE" STANDARD AS A
            MATTER OF LAW ........................................................... 16

      E.    PLAINTIFF'S PRAYER FOR ATTORNEY FEES
            MUST BE STRICKEN ...................................................... 20

IV.   CONCLUSION.................................................................................................. 21

# TABLES OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937,
    173 L.Ed.2d 868 (2009).................................................................. 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007).................................................. 12

*Giri v. Med. Inter–Insurance Exch. of N.J.*
    251 N.J.Super. 148, 597 A.2d 561 (App. Div. 1991)................................... 20

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*
    896 F2d 1542 (9th Cir. 1989) ........................................................ 13

*Ketzner v. John Hancock Mut. Life Ins. Co.*
    118 Fed.Appx. 594 (3d Cir. 2004).................................................... 14

*Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*
    515 F2d 1200 (5th Cir. 1975) ....................................................... 13

*Paulemon v. Tobin*, 30 F.3d 307 (2d Cir. 1994) .................................................. 17

*Pension Benefit Guar. Corp. v. White Consol. Indus.*,
    998 F.2d 1192 (3d Cir.1993) ......................................................... 13

*Phillips v. County of Allegheny*, 515 F.3d 224, 233
    (3d Cir. 2008)............................................................................ 12

*Pickett v. Lloyd's*, 131 N.J. 457, 621 A.2d 445 (N.J.1993)................... 14, 15, 16, 17

*Tarsio v. Provident Ins. Co.*, 108 F.Supp.2d 397 (D.N.J. 2000) ......... 15, 16, 17, 18

*Thompson v. Illinois Dept of Prof. Reg.*,
    300 F3d 750 (7th Cir. 2002) ........................................................ 19

*United States ex rel. Riley v. St. Luke's Episcopal Hosp.*,
    355 F3d 370 (5th Cir. 2004) ........................................................ 19

**Rules**

Federal Rules of Civil Procedure

Rule 12(f) .................................................................................... 1, 2, 19, 20

iii

Rule 56 ................................................................................................. 1, 13

Rule 10(c) ................................................................................................ 13

Rule 12(b)(6) ...................................................................................... passim

Rule 12(d) ............................................................................................... 13

Rule 8(a)(2) ............................................................................................ 12

New Jersey Court Rule 4:42–9 ............................................................... 20

Pursuant to Rule 12(b)(6), or in the alternative Rule 56 of the Federal Rules of Civil Procedure, defendant ATRIUM 5 hereby presents its memorandum of law in support of its motion to dismiss Count II of the complaint for breach of the covenant of good faith and fair dealing (bad faith).   Atrium further moves this Court to strike the complaint's prayer for attorney fees pursuant to Rule 12 (f).

## INTRODUCTION

This action concerns an insurance contract dispute.  Plaintiff Onex Credit Partners ("Plaintiff" or "Onex") seeks benefits for the purported permanent total disability of its executive, Mr. Stuart Kovensky.  Defendant ATRIUM 5 LTD., ("Defendant" or "Atrium"), denies plaintiff is entitled to benefits.

This litigation is straightforward.  Plaintiff has filed suit for a determination that Plaintiff qualifies for benefits under the policy.  Nonetheless, Plaintiff has endeavored to transform this simple contract dispute into something which it is not:  an insurance bad faith claim.  Plaintiff's claims of bad faith, however, are belied by the allegations of its First Amended Complaint, which show that, as a matter of law, Defendant's decision to deny benefits was reasonable and based upon a thorough investigation and analysis by Defendant.  Specifically, the First Amended Complaint ("FAC") attaches a comprehensive twenty-three (23) page letter which describes in detail Defendant's exhaustive investigation of Plaintiff's disability claim and the compelling reasons for denial of that claim.

1

Under New Jersey law, in order to allege a claim for bad faith, a plaintiff must show that the insurer lacked a "fairly debatable" reason for its refusal to pay a claim. The "fairly debatable" standard means that a plaintiff must establish as a matter of law a right to summary judgment on the bad faith claim. If material issues of disputed fact exist as to the propriety of denial of the underlying benefits claim, an insured cannot maintain a claim for relief based upon alleged bad faith.

The decision letter attached to the Complaint- which forms part of the pleadings- establishes as a matter of law that Defendant's decision to deny benefits under the permanent total disability policy was based upon Defendant's reasonable and justifiable conclusion that Plaintiff did not qualify for benefits under the terms of the subject policy.

Though Plaintiff may have alleged facts showing the existence of a contract dispute,   Plaintiff has not and cannot allege that Defendant denied permanent total disability benefits in bad faith. To the contrary, the FAC alleges—at a minimum—that the denial was not in bad faith under New Jersey's "fairly debatable" standard.[1]   Therefore, the Breach of Covenant of Good Faith and Fair Dealing claim (Count II of the FAC) must be dismissed with prejudice.

The FAC also includes an improper prayer for attorneys' fees. Pursuant to Federal Rules of Civil Procedure 12(f), Plaintiff's request for attorney's fees must

---

[1] In fact the evidence strongly demonstrates that Defendant made the correct claims decision.

be stricken with prejudice because New Jersey law does not authorize an award of fees to an insured on a direct suit against the insurer to enforce first-party coverage. Because Plaintiff's action seeks first-party benefits under a disability insurance policy, it may not recover attorneys' fees, and that claim should be stricken.

## FACTUAL BACKGROUND

### A.   THE POLICY

According to the FAC, in or around October 2007, Plaintiff obtained a Lloyd's of London Contract Frustration Insurance Policy (the "Policy") which is attached to the FAC as Exhibit A which insured against the total disability of Onex's former Co-CEO, Stuart Kovensky.  (*See* Statement of Undisputed Facts ("SUMF") number (#)1.)   The Policy provides, among other things, for a lump sum of $5,000,000 to be paid to Onex in the event of the permanent and total disability of Stuart R. Kovensky ("Mr. Kovensky") as defined by the terms of the Policy.  (SUMF #2.)   Per the terms of the Policy, payment for a disability benefit arises when "[T]he Insured becomes Permanently and Totally Disabled . . ." which means "[t]he Insured is permanently and totally unable to perform the substantial and material duties of his or her regular occupation as shown in the Schedule for the entire Elimination Period [12 months], and is not expected to recover for the remainder of his or her life." (SUMF #3.)   In addition, the Policy excludes coverage for "any psychosis, neurosis, or neuropsychiatric illness including, but

3

not limited to, any emotional anxiety or depression illness for which any form of psychiatric or psychological therapy is indicated or received." (SUMF # 4.)

## B.   PLAINTIFF'S CLAIM FOR PERMANENT AND TOTAL DISABILITY BENEFITS

According to the FAC in paragraphs 19-20, "Mr. Kovensky's job duties included investment and portfolio management as well as marketing activities (that required extensive travel) and investor relations" and "[i]n addition, Mr. Kovensky's job duties also included financial, operations, administration, regulatory compliance issues, and human resource management." (SUMF #5)

On March 3, 2010, Mr. Kovensky "suffered a significant heart event –an acute aortic dissection . . ." (SUMF #6.)  He thereafter returned to work in June 2010, but by February 2011, Mr. Kovensky ceased performing all substantial and material duties of his occupation. (SUMF #7.)  According to the FAC, in or around February 2011, "Mr. Kovensky became permanently and totally disabled as defined by the policy . . ." (SUMF #8.)  On February 24, 2011, "Onex gave notice of its claim for benefits under the Policy based upon the permanent and total disability of Mr. Kovensky." (SUMF #9.)

## C. ONEX'S CLAIM INVESTIGATION AND DECISION

On April 4, 2013, after an extensive and comprehensive investigation of the claim, "Defendant, through its agent International Risk Management Group ("IRMG"), denied Onex's claim for benefits under the policy.[2] (SUMF #10.)

Defendant's decision letter dated April 4, 2013 (which is attached as part of Plaintiff's pleading) demonstrates that Defendant's claim investigation included the following actions:

- Questionnaires to insured Mr. Kovensky (The Insured Statement) (SUMF #11)
- Questionnaires for completion by medical providers (Attending Physician's Statement) (SUMF #11a);
- Questionnaires to Onex regarding Mr. Kovensky's claim (SUMF #11b);
- Review of all medical records for the relevant period from his health care providers (which included documentation from at least twenty-two health care providers) (SUMF #11c);

---

[2] Though the FAC asserts that Defendant failed to make a coverage decision until over two years after first notice of plaintiff's claim, and that no valid reason existed for such substantial delay (FAC ¶ ¶ 37-39), the FAC itself undermines this allegation. The Policy includes a twelve month elimination period which could arguably run no earlier than February 2012. Thus, no claim would have been payable during that one year period. The claim investigation, including review of over 150,000 documents only supplied by Onex in December 2012 and expert medical reviews, was efficiently completely by April 2013. There was no delay, let alone substantial unreasonable delay.

- Independent medical records review by board certified cardiologist Dr. Colman Ryan with a report and a supplemental report. (SUMF #11d);
- An independent medical examination of Mr. Kovensky by a board certified cardiologist-surgeon Dr. Alex Zapolonski with a report. (SUMF #11e);
- Obtaining and reviewing over 150,000 documents related to Mr. Kovensky's work activities at Onex (SUMF #11f); and,
- Retention of a securities industry analyst to review records and provide a report. (SUMF #11g).

The decision letter dated April 4, 2013 explained why the claim was not covered. The letter's conclusions include the following:

1. "Onex's claim does not satisfy the first requirement for coverage; that as a direct result of sickness which first manifests itself during the Policy period that permanent total disability commenced within 365 days of that sickness. (…)Mr. Kovensky has successfully recovered from his heart surgery and has been entirely physically fit to engage in any activity he desires, other than lifting over 100 pounds.  For that reason alone Onex's claim is denied." (SUMF #12).

2. "The medical records, as well as Mr. Kovensky's physical examination and record review conducted by Dr. Ryan affirm that Mr. Kovensky's heart dissection repair and recovery were successful and that his heart is and has been stable and functioning properly." (SUMF #13).

3. "In order to establish Mr. Kovensky's physical condition for the relevant period, IRMG consulted with Dr. Colman Ryan, M.D. a cardiologist who is Board Certified in Internal Medicine with a specialty in cardiovascular

disease, to review all medical records and provide an opinion. A copy of Dr. Ryan's report and findings are attached hereto for your review.[3]   In his report (...), Dr. Ryan concluded in pertinent part: (...) "... the present condition of Mr. Kovensky's heart and aorta is quite stable. Mr. Kovensky should be able to perform any physical activity that does not involve heavy lifting, such as isometric exercise, i.e. lifting more than 100 pounds." Dr. Ryan, in his supplemental report states: "His risks for further damage or dissection or any recurrence      of his previous problem are at trivial levels of risk at this time, regardless of his physical or emotional distress. (...) It is my opinion, based on the description of Mr. Kovensky's usual occupation with all his attended stresses, that he is at minuscule threat of re-dissection of his aorta." (SUMF #14.)

4.  "IRMG also sent the available medical information to Dr. Alex Zapolonski, a cardiac surgeon (...) who is Board Certified in Surgery and Thoracic Surgery.  Dr. Zapolonski conducted a Physical Examination of Mr. Kovensky on May 8, 2012. After review of the medical records, including Mr. Kovensky's films, and completion of the Physical Examination, Dr. Zapolonski reported his findings in a report dated August 20, 2012.  A copy of that report is attached hereto for your review.[4]  That report indicates in pertinent part: "Mr. Kovensky (...)...seems to be physically fit and has by stress test evaluation, unlimited physical capacity.  He complains of a number of symptoms ...none of which seem to be related to the aortic

---

[3] Plaintiff did not attach Dr. Ryan's report to Exhibit B of the First Amended Complaint.  The report can be provided to the Court upon request.

[4] Plaintiff also did not attach Dr. Zapolonski's report to Exhibit B of the First Amended Complaint.  Like Dr. Ryan's report, it can be provided to the Court upon request.

dissection … From a purely physical perspective his limitations would be to avoid situations that are likely to put undue stress on his aorta such as heavy lifting or protracted Valsalva maneuvers.  Although he will require aortic surveillance for the remainder of his life, I find it hard to justify a permanent physical disability at this time …" (SUMF #15)

5.  "Both Dr. Ryan and Dr. Zapolonski have concluded that Mr. Kovensky does not have a continuing dissection and is physically able to perform his occupation."  (SUMF #16.)

6.  "The contemporaneous records of Mr. Kovensky's treating physician by Dr. Hershman provide no indication that he advised Mr. Kovensky to stop working, or that significant stress from work could cause further rupturing or dissection of his aorta."  (SUMF #17.)

7.  "The contemporaneous records of Mr. Kovensky's treating physician Dr. Girardi also do not reflect advice to Mr. Kovensky that he should permanently cease work to avoid stress." (SUMF #18.)

8.  "Onex's claim is also denied because it is specifically excluded from coverage based on the Policy exclusion which states as follows:

> This Policy does not cover any loss caused by, in   whole or in part, or as a result of:
>
> 6.) Any psychosis, neurosis, or neuropsychiatric illness including, but not limited to, any emotional anxiety or depression illness for which any form of psychiatric   or   psychological   therapy   is indicated or received'

The medical records, including the psychological notes from Dr. Allan (treating psychologist), reveal that Mr. Kovensky's decision to reduce his work is related to his decision to "get out of the fast lane." Despite being told at least by treating physicians Drs. Schwartz and Girardi that his ongoing pain symptoms (chest pain, numbness, ocular migraines) were

unrelated to his heart dissection, Mr. Kovensky remained anxious and concerned that these ongoing problems were indeed related to his heart dissection... To the extent that Onex and Mr. Kovensky claim that Mr. Kovensky cannot perform the substantial and material duties of his occupation, such claimed inability is caused in whole or in part, or as a result of psychological issues and/or emotional anxiety regarding his cardiac condition for which he received psychological therapy, such a claimed loss is specifically excluded for reasons stated above." (SUMF #19.)

9.   "In early December 2012 [Onex] sent IRMG a disk containing over 150,000 documents, many of which were emails addressed to and/or from Mr. Kovensky with associated attachments for the months of November 2009, December 2010, March, July, and December 2011, and May 2012. (SUMF #20.)

10.   "IRMG also consulted a securities industry expert Mr. John Maine to review documents and information supplied by Onex and to evaluate Mr. Kovensky's activities for Onex for the period through May 2012 (the last month for which Onex supplied documents).  (…) Mr. Maine's analysis compared Mr. Kovensky's activities evident in the documents provided by Onex to the description of Mr. Kovensky's roles and responsibilities provided in the Insured Statement dated April 19, 2011.  Mr. Maine concludes that after the claimed permanent and total disability in February 2011, Mr. Kovensky continued to be actively involved in marketing and investor relations, portfolio and investment management, investment research, human resource management, regulatory compliance, and finance/operations/administrative activities at Onex." (SUMF #21)

11.   "Furthermore, there is additional information demonstrating that Mr. Kovensky has remained actively working at Onex. (…)In early December

2012 Onex provided IRMG with documents including emails related to Mr. Kovensky with attachments for limited months - November 2009, December 2010, March, July and December 2011; and May 2012. (…) Mr. Maine reviewed these documents and found that Mr. Kovensky continued to be actively involved in Marketing/Investor Relations, as he set policy and monitored marketing success. Mr. Kovensky engaged in hiring, supervision and mentorship of Onex marketing employees regarding presentations, strategy and the content of marketing materials. Furthermore, Mr. Kovensky continued to directly market to clients and potential clients, even taking the lead in soliciting specific clients." (…) Mr. Maine also found that Mr. Kovensky continued to be actively involved in Portfolio and Investment Management and Investment Research. (…)Mr. Maine also found that Mr. Kovensky continued to be involved in Human Resource Management." (SUMF #22)

12. "Though Onex represented to IMRG that Mr. Kovensky was permanently and totally disabled as of mid-February 2011, on March 31, 2011 Onex filed, under penalty of perjury, a Form ADV with the Securities and Exchange Commission in which it stated that Mr. Kovensky remained Onex's "Director, Managing Member, Co-Chief Executive Officer and Co-Chief Executive Officer and Co-Chief Investment Officer", and a "Control Person"." (SUMF #23)

13. "The documents produced by Onex and Mr. Maine's Report establish that Mr. Kovensky continued to perform the substantial and material administrative duties of Executive at Onex, as defined by Onex and Mr. Kovensky, during the Elimination Period."(SUMF #24.)

14. "Based on the documents supplied by Onex and reported work activities at Onex through May 2012, Mr. Kovensky did not satisfy the Policy's

requirement of being permanently and totally unable to perform the substantial and material duties of his regular occupation as stated in the Policy of "Executive" for the entire Elimination Period (365 days from the date of his claimed total disability of "Mid-February 2011")." (SUMF #25.)

## D.   PLAINTIFF'S ACTION FOR BREACH OF CONTRACT AND BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

The FAC contains two Counts:  Count I for Breach of Contract (FAC, ¶¶30-35) is not challenged by this motion, and Count II for Breach of Covenant of Good Faith and Fair Dealing (FAC, ¶¶36-41).  The Breach of Covenant of Good Faith and Fair Dealing count alleges that Onex gave first notice of its claim for benefits under the subject policy around February 2011 and that Defendant failed to make a coverage determination until April 2013 – over two years later.  (FAC, ¶¶37-38). Count II further alleges that "no valid reason existed for such substantial delay in processing Onex's claim and that Defendant knew or recklessly disregarded the fact that no valid reasons supported the substantial delay and denial of coverage." (FAC, ¶¶39-40).   Count II further alleges "Onex has suffered and continues to suffer substantial damages entitling it to an award of damages as permitted by law."  (FAC ¶ 41.)

Plaintiff's allegation that the denial was not supported by valid reasons is contradicted by other allegations of the FAC, specifically, the contents of the insurance policy and the decision letter dated April 4, 2013 which is attached to the FAC as Exhibit B.  (FAC, ¶ 28; Ex. B.)   Simply put, the uncontradicted facts contained in that letter defeat any claim that defendant acted in bad faith (and strongly indicates that the Insurer made the correct claims decision).

## LEGAL ANALYSIS

### A.   STANDARD OF REVIEW

In addressing a motion to dismiss a complaint under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008). At this stage, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 554, 556 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-that the 'pleader is entitled to relief.'" *Iqbal,* 129 S.Ct. at 1950 (quoting Rule 8(a)(2)).

The sole issue raised by a Rule 12(b)(6) motion is whether the facts pleaded would, if established, support a valid claim for relief. In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and

undisputedly authentic documents if the complainant's claims are based upon those documents. *See Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir.1993).   Though in a Rule 12(b)(6) motion the court cannot consider matters outside the pleadings, material properly submitted with the complaint (i.e., exhibits under FRCP 10(c)) may be considered as part of the complaint for purposes of a Rule 12(b)(6) motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F2d 1542, 1555 (9th Cir. 1989).   **The district court, however, may disregard allegations in the FAC if contradicted by facts established by reference to documents attached as exhibits to the FAC.** *Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank*, 515 F2d 1200, 1206 (5th Cir. 1975)(emphasis added).

Rule 12(d) of the Federal Rules of Civil Procedure also provides that if, on a motion to dismiss under Rule 12(b)(6), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment pursuant to Rule 56.   Pursuant to Rule 56, Summary Judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits", if any, "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.

Applying the above law to this matter, this Court must consider the facts as set forth in the denial letter that Plaintiff attached to the Complaint for purposes of this Rule 12(b)(6) motion to dismiss.

**B.    BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING: THE "FAIRLY DEBATABLE" STANDARD**

New Jersey law limits claims for insurance bad faith to those cases in which the insurer lacked a "fairly debatable" reason for its refusal to pay a claim.  *Pickett v. Lloyd's,* 131 N.J. 457, 621 A.2d 445, 454 (N.J. 1993).

To establish a bad faith claim for denial of benefits, a plaintiff must show "(1) the insurer lacked a 'fairly debatable' reason for its failure to pay a claim, and (2) the insurer knew or recklessly disregarded the lack of a reasonable basis for denying the claim." *Ketzner v. John Hancock Mut. Life Ins. Co.,* 118 Fed.Appx. 594, 599 (3d Cir. 2004).  A finding of bad faith for a processing delay depends upon a plaintiff pleading and proving when "the insurer unreasonably delays the processing of a valid claim, and the insurer knows or recklessly disregards the fact that the delay is unreasonable."   Although applied in slightly different circumstances, the "fairly debatable" and "unreasonable delay" tests are "essentially the same." *Pickett,* 131 N.J. 457, 621 A.2d at 454.

In order to meet the "fairly debatable" standard, a plaintiff must establish as a matter of law a right to summary judgment on the bad faith claim.  If there are material issues of disputed fact as to the underlying benefits claim, an insured

cannot maintain a cause of action for bad faith.  *Pickett*, 131 N.J. 457, 621 A.2d 445.

## C.    TARSIO V. PROVIDENT

*Tarsio v. Provident Ins. Co.*, 108 F.Supp.2d 397 (D.N.J. 2000), a case with facts similar to ours, is instructive.  In *Tarsio*, the United States District Court, District of New Jersey, applying New Jersey law, found the defendant, Provident, had satisfied the "fairly debatable" standard by demonstrating a question of fact as to the underlying claim and thus held that Plaintiff failed to allege a bad faith claim against Provident.  *Tarsio*, 108 F.Supp.2d 397.

*Tarsio* involved a disability insurance policy.  Tarsio, the plaintiff, was the president of Rocco Caruso, and managed the day-to-day operation of the company. While at Rocco Caruso, Tarsio purchased two separate disability insurance policies from defendant.  *Tarsio*, 108 F.Supp.2d at 398.

In June 1996, Tarsio claimed he became depressed and in August 1996 he claimed he could no longer work due to depression.  His claim was buttressed by the findings of two physicians, and a psychotherapist, who diagnosed plaintiff with depression, and concluded that Tarsio should not return to his present job.  *Tarsio*, 108 F.Supp.2d at 398-399.

After Tarsio submitted a claim for disability benefits, Provident commenced an evaluation of his claim.  After reviewing all the relevant medical records,

questionnaires, and obtaining two separate independent medical examinations and follow up reports from the independent medical examiners, Provident denied plaintiff's claim. *Tarsio*, 108 F.Supp.2d at 398-400.

In analyzing the "fairly debatable" standard and concluding there was no bad faith claim, the *Tarsio* Court explained:

> Indeed, Provident purportedly relied upon the reports of Dr. David Gallina and Dr. Nancy Gallina in denying plaintiff's claim. Those reports cast doubt upon plaintiff's veracity, suggesting that plaintiff "exaggerated" his depression for the purpose of obtaining insurance benefits. Provident also proffers evidence that it relied on medical reports indicating that plaintiff responded well to medication, his condition improved, and he "could return to work." From this evidence, Provident argues that it satisfies the "fairly debatable" standard.
>
> The Court is compelled to agree. Such evidence would preclude summary judgment as to the underlying claim. Indeed, if the jury believes the reports concerning plaintiff's veracity, they may reasonably conclude that plaintiff is, in fact, not disabled. Moreover, Provident's evidence pertaining to mental improvement and an imminent return to work suggest a condition inconsistent with the alleged disability. While the Court acknowledges that Dr. David Gallina found that plaintiff may be unable to return to his prior job, the doctor noted that plaintiff's "exaggeration" may have skewed some test results. He also found indications of "malingering." Viewing the evidence in its totality, a reasonable juror could find that defendant reasonably denied plaintiff benefits. Hence, because Provident has demonstrated a question of fact as to the underlying claim, Provident has satisfied the "fairly debatable" standard. *Pickett*, 131 N.J. at 473-74, 621 A.2d 445. Accordingly, the Court must grant Provident's motion for partial summary judgment as to plaintiff's "bad faith" claim.

*Tarsio*, 108 F.Supp.2d at 402.

**D.    PLAINTIFF'S CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING MUST BE DISMISSED WITH PREJUDICE BECAUSE THE FAC DEPICTS A FACTUAL DISPUTE AS TO THE UNDERLYING CLAIM, THUS SATISFYING THE "FAIRLY DEBATABLE" STANDARD AS A MATTER OF LAW**

Like the *Tarsio* case, this case also involves a claim in which an insurer denied a disability claim following an extensive investigation. Here, the reasons

16

for the denial of Onex's claim are explained in detail within a twenty-three (23) page letter attached to the FAC as Exhibit B, which therefore, as a matter of law, contradicts any claim that "no valid reason existed for denial of coverage." (FAC ¶40, Ex. B.)[5] As affirmed by *Tarsio* and *Pickett*, the decision letter which is part of the pleading sets forth evidence demonstrating a question of fact as to the underlying claim (bad faith), thus satisfying the "fairly debatable" standard and requiring dismissal of the bad faith claim.   The decision letter chronicles the extraordinary steps taken by the insurer to investigate the validity of the claim, and then lays out the plethora of evidence which required denial of the claim.

Though the FAC criticizes the insurer for "substantial delay in processing ONEX's claim", under the express terms of the insurance contract, the twelve month Elimination Period would run in February 2012, at the earliest.   Onex did not supply documents frequently requested by Defendant until December 2012, and then produced over 150,000 documents which took some time to review. Those documents were reviewed by a securities industry expert who concluded that as of May 2012, Mr. Kovensky continued to perform all of the substantial and material duties of his occupation (which duties are confirmed and detailed by Plaintiff in paragraphs 19-20 of the FAC).   The FAC with exhibits attached thereto demonstrates that there was no unreasonable delay in reaching the decision of non-coverage in April 2013.

Defendant's decision was based on responses to questionnaires to insured Mr. Kovensky, responses to questionnaires to various medical providers, responses to questionnaires to Onex regarding Mr. Kovensky's claim, review of all medical records for the relevant period from over twenty-two health care providers, an

---

[5] To emphasize, because this letter is attached as an exhibit to the FAC, the entire contents of the letter are incorporated as allegations in the FAC.   *Paulemon v. Tobin* 30 F.3d 307, 308-309 (2d Cir. 1994).

independent medical records review and related reports by board-certified cardiologist Dr. Colman Ryan, an independent medical examination of Mr. Kovensky by a board certified cardiologist-surgeon Dr. Alex Zapolonsky with a related report, a review of over 150,000 documents from Onex to evaluate Mr. Kovensky's activities with the company during the time of claimed permanent total disability, and retention of a securities industry analyst (John Maine) to perform a records review and provide a related report.  In *Tarsio*, the claimant offered evidence of treating physicians who declared him to be disabled, but the Court nevertheless agreed that Provident had met the "fairly debatable" standard because its investigation had uncovered contrary evidence suggesting that Mr. Tarsio had exaggerated his sickness. *Tarsio* at 402.   The medical records demonstrate that Mr. Kovensky was not permanently totally disabled (defined as, as a result of (..)Sickness, the Insured is permanently and totally unable to perform the substantial and material duties of his or her regular occupation as shown in the Schedule for the entire Elimination Period and is not expected to recover for the remainder of his or her life.).   The decision letter points out statements and conclusions of Mr. Kovensky's treating physicians (Dr. Hershman, Dr. Girardi) which did not support a finding that Mr. Kovensky was permanently and totally disabled.   The decision letter explains that the Insurer consulted with a board certified cardiologist (Dr. Ryan) who had reviewed the records and concluded that Mr. Kovensky was not permanently and totally disabled.   The decision letter explains that the Insurer consulted with a board certified cardio surgeon (Dr. Zapolonski) who conducted a medical examination of Mr. Kovensky in addition to a records review, and concluded that Mr. Kovensky was not permanently totally disabled.

The decision letter further explains that Defendant consulted with a securities expert (John Maine) to review the over 150,000 documents provided by

Onex in December 2012 concerning the work of Mr. Kovensky during the relevant period, and who concluded that Mr. Kovensky was not permanently totally disabled because the records show that Mr. Kovensky continued to perform the substantial and material duties of his profession at least as of May 2012.  The decision letter also points out that Onex filed a financial statement (Form ADV) in March 2011 indicating that Mr. Kovensky continued to perform the substantial and material duties of his profession, completely contradicting Plaintiff's claim that Mr. Kovensky was disabled at that time, and that this was another basis for denial of the claim.  Finally, the decision letter clearly explained that the entire claim was independently excluded based on evidence, in particular medical records from Mr. Kovensky's treating psychologist Dr. Allan, which indicated that Mr. Kovensky's inability to work, if valid, was the result of psychological issues and/or emotional anxiety regarding his cardiac condition for which he has received psychological therapy, a condition that is specifically excluded in the Policy.

The facts alleged in the FAC confirm that Defendant has satisfied the "fairly debatable" standard to defeat Plaintiff's claim for relief for breach of the covenant of good faith and fair dealing.  The evidence contained in Exhibit B is entirely inconsistent with a claim for breach of the covenant of good faith and fair dealing.  And no amendment can cure the infirmity of the claim.  "When a written instrument contradicts allegations in the FAC to which it is attached, *the exhibit trumps the allegations*."  *Thompson v. Illinois Dept of Prof. Reg.*, 300 F3d 750, 754 (7th Cir. 2002) (emphasis in original; internal quotes omitted); *United States ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F3d 370, 377 (5th Cir. 2004).  Accordingly, Plaintiff's breach of covenant of good faith and fair dealing claim must be dismissed with prejudice.

19

## E.   PLAINTIFF'S PRAYER FOR ATTORNEY FEES MUST BE STRICKEN

Rule 12(f) of the Federal Rules of Civil Procedure allows a party to move to strike from a pleading "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." (FRCP 12(f)).  Here, the FAC improperly includes a prayer for attorney's fees,[6] which must, as a matter of law, be stricken.

New Jersey Court Rule 4:42–9 prohibits the award of attorneys' fees except in specific circumstances, one of which is "an action upon a liability or indemnity policy of insurance, in favor of a successful claimant." N.J. Ct. R. 4:42–9(a)(6). This exception is limited to instances where "'an insurer refuses to indemnify or defend its insured's third-party liability to another' and does not authorize an award of counsel fees to an insured 'on a direct suit against the insurer to enforce a casualty or other first-party direct coverage.'" *Giri v. Med. Inter–Insurance Exch. of N.J.,* 251 N.J.Super. 148, 597 A.2d 561, 562–63 (N.J.App.Div.1991) (citation omitted).

This is not a case, however, of a third party claiming loss against the insured. The plaintiff itself is seeking payment under the policy in a suit it brought against its insurer, and as such, is precluded from receiving attorneys' fees on any count. Accordingly, pursuant to Rule 12(f) the plaintiff's claim for attorneys' fees must be stricken.

---

[6] See, FAC, Prayer for Relief, paragraph 2.

## **CONCLUSION**

For the reasons stated above, Defendant ATRIUM 5 LTD., respectfully requests this Court dismiss with prejudice Count II of the First Amended Complaint (Breach of Covenant of Good Faith and Fair Dealing), or alternatively for partial summary judgment on that issue, and to strike the prayer for attorney's fees.

MOUND COTTON WOLLAN
& GREENGRASS

Attorneys for Defendant
**ATRIUM 5 LTD.**

By:   _/s/ Paul S. Danner_
Paul S. Danner (PD0175)

Dated:  January 22, 2014