**Document Electronically Filed**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ONEX CREDIT PARTNERS, LLC, a
Delaware Company

                              Plaintiff,

        v.

ATRIUM 5 LTD., an Underwriter at Lloyd's,
London individually, and in its capacity as
representative Underwriter at Lloyd's, London
for certain subscribing Underwriters at
Lloyd's, London who subscribed to Policy #
RC967307/127

                           Defendant.

Civil Action No. 2:13-cv-05629
(DMC/JBC)

---

### MEMORANDUM OF LAW IN OPPOSITION TO ATRIUM 5 LTD'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT AND TO STRIKE CLAIM FOR ATTORNEYS FEES AND IN SUPPORT OF REQUEST FOR DISCOVERY PURSUANT TO RULE 56(d)

---

Motion Date:  March 3, 2014

David R. King, Esq.
Kathleen H. Robinson, Esq.
HERRICK, FEINSTEIN LLP
210 Carnegie Center
Princeton, New Jersey 08540
(609) 452-3800 (T)
(609) 520-9095 (F)
Email: dking@herrick.com
Email: hrobinson@herrick.com

Attorneys for Plaintiff

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................. i

PRELIMINARY STATEMENT ...................................................... 1

STATEMENT OF FACTS ............................................................ 1

ARGUMENT ............................................................................ 6

    A.  PLAINTIFF SUFFICIENTLY PLED A CAUSE OF ACTION FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING BASED ON DEFENDANT'S BAD FAITH HANDLING AND DENIAL OF PLAINTIFF'S INSURANCE CLAIM ............................................. 9

    B.  DEFENDANT'S ATTEMPT TO RELY ON ITS SELF-SERVING APRIL 4, 2013 LETTER DENYING INSURANCE COVERAGE DOES NOT OBVIATE PLAINTIFF'S RIGHT TO DISCOVERY .................................... 12

    C.  THE COURT SHOULD NOT DISMISS PLAINTIFF'S CLAIM FOR ATTORNEY'S FEES ............................................................... 18

CONCLUSION .......................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### <u>Cases</u>

Bello v. Merrimack,
   2012 WL 2848642 (App. Div. July 12, 2012) ...............................................18, 19

Burlington Coat Factory Sec. Litig.,
   114 F.3d 1410 (3d Cir.1997).................................................................................7

Cardenas v. Massey, et al.,
   269 F.3d 251 (3d Cir. 2001).................................................................................9

Celotex Corp. v. Catrett,
   477 U.S. 317 (1986)................................................................................7, 8, 17

Croker v. Applica Consumer Prods., Inc.,
   2006 WL 626425 (D.N.J. Mar. 10, 2006)......................................................8, 17

Fellner v. Tri-Union Seafoods, LLC,
   539 F.3d 237 (3d. Cir. 2008)...............................................................................6

Ghana v. Holland,
   226 F.3d 175 (3d Cir. 2000).................................................................................9

Glenmede Trust Co. v. Thompson,
   56 F.3d 476 (3d Cir. 1995).................................................................................14

Guarantee Ins. Co. v. Saltman,
   217 N.J. Super. 604 (App. Div. 1987) ...............................................................18

Hines v. Consolidated Rail Corporation,
   926 F.2d 262 (3d Cir. 1991).................................................................................9

Hoover v. Ronwin,
   466 U.S. 558 (1984).............................................................................................6

In re ML-Lee Acquisition Fund II, L.P.,
   859 F. Supp. 765 (D. Del. 1994).......................................................................14

LaSalandra v. Penn. General Ins. Co.,
   2004 WL 1636977 (E.D. Pa. July 12, 2004)...............................................7, 11, 12

Liss v. United States,
   915 F.2d 287 (7th Cir. 1990) .............................................................................14

LoBiondo v. Schwartz,
    199 N.J. 62 (2009) ...................................................................................14

McCray v. Maryland Dept. of Transp.,
    --- F.3d ---, 2014 WL 3123272 (4th Cir. 2014) ....................................8

McLain v. Real Estate Bd. of New Orleans, Inc.,
    444 U.S. 232 (1980) .................................................................................6

Meinhardt, et al. v. UNISYS,
    74 F.3d 420 (3d Cir. 1996) ......................................................................8

Miglicio v. HCM Claim Management Corp.,
    288 N.J. Super. 331 (1995) ...................................................................10

Myron Corp. v. Atlantic Mut. Ins. Corp.,
    407 N.J. Super. 302 (App. Div. 2009) .................................................18

Phillips v. County of Allegheny,
    515 F.3d 224 (3d Cir.2008) .....................................................................7

Pickett v. Lloyds,
    131 N.J. 457, 621 A.2d 445 (App. Division 1991) .............................9, 10

Portadam, Inc. v. Seabright Ins. Co.,
    2011 WL 43010 (D.N.J. June 6, 2011) ...............................................7, 11

Szumigala v. Nationwide Mutual Ins. Co.,
    853 F.2d 274 (5th Cir. 1988) ..............................................................13, 14

Taddei v. State Farm Indem. Co.,
    401 N.J. Super. 449 (App. Div. 2008) ...............................................15, 17

Tannerfors v. American Fidelity Fire Ins. Co.,
    397 F. Supp. 141 (D.N.J. 1975) ............................................................15

Tarsio v. Provident Ins. Co.,
    108 F. Supp. 2d 397 (D.N.J. 2000) .....................................................10, 11

United States v. Martorano,
    767 F.2d 63 (3d Cir. 1985) .....................................................................14

## Statutes

N.J.S.A. 17:29B-4 ................................................................................................9

## **Other Authorities**

Fed. R. Civ. P. 8(a)(2) ............................................................................7

Fed. R. Civ. P. 12(b)(6) ...................................................................6, 7, 9

Fed. R. Civ. P. 12(d) ..............................................................................6

Fed. R. Civ. P. 56 ...............................................................................7, 9

Fed. R. Civ. P. 56(d) ................................................................1, 6, 8, 17

New Jersey Court Rule 4:42-9(a)(6) ......................................................18

iv

Plaintiff Onex Credit Partners, LLC ("Plaintiff" or "Onex") respectfully submits this memorandum of law (a) in opposition to the motion filed by Defendant Atrium 5 Ltd. ("Defendant" or "Atrium") seeking dismissal of, or in the alternative summary judgment on, Plaintiff's cause of action for breach of the implied covenant of good faith and fair dealing and (b) in support of discovery pursuant to Rule 56(d) on Plaintiff's claim for breach of the covenant of good faith and fair dealing.

## PRELIMINARY STATEMENT

Atrium's position is simple, but wrong.  Atrium suggests that when an insurer denies coverage based on purported reliance on third-party consultants, the Court must as a matter of law – and without any discovery whatsoever -- credit the insurer's representations and dismiss outright any claim for breach of the covenant of good faith and fair dealing that attaches to every insurance contract.  Atrium argues this to be the case even where it unconscionably delayed providing an insurance coverage determination for over two years.  Indeed, it appears that Atrium seeks a ruling that will benefit insurers (and prejudice insureds) everywhere:  so long as you retain an expert or two to rely on before denying coverage, you can act as poorly as you wish during the claim review process with no threat of any real repercussions.  With good reason, Atrium's position is not now, and has never been, the law.  The Court should deny Defendant's motion to dismiss and/or for partial summary judgment and reject Defendant's motion to strike Plaintiff's claim for attorney's fees.

## STATEMENT OF FACTS

This is an action for payment of benefits under a Lloyd's of London Contract Frustration Insurance Policy, Policy Number RC967307/127 (the "Policy") owned by Plaintiff and insuring

1

against the total disability of Onex's former Co-CEO, Stuart Kovensky ("Mr. Kovensky"). (FACTS[1] at ¶ 26).  Defendant issued the Policy on or about October 31, 2007.  (FACTS at ¶ 27).

The Policy provides, among other things, for a lump sum of $5,000,000 to be paid to Onex in the event of the permanent and total disability of Mr. Kovensky as defined by the terms of the Policy.  (FACTS at ¶ 28).  "Permanently Totally Disabled" as defined by the Policy means:

> as a result of a covered Injury or Sickness, the Insured is permanently and totally unable to perform the substantial and material duties of his or her regular occupation as shown on the Schedule for the entire Elimination Period and is not expected to recover for the remainder of his or her life.  The Insured must also be under the regular care of Physician that is appropriate for the condition causing the disability.

(FACTS at ¶ 29).   Mr. Kovensky's regular occupation was defined in the Policy as Co-Chief Executive Officer of Onex.  (FACTS at ¶ 36).  Mr. Kovensky's "substantial and material" duties consisted of 60-70 hour work weeks, with responsibility for investment and portfolio management, marketing activities (that required extensive travel), and investor relations, as well as financial, operations, administration, regulatory compliance issues, and human resource management.  (FACTS at ¶ 36).

On March 3, 2010, while the Policy was in full force and effect, Mr. Kovensky was traveling on business for Onex in British Columbia, in Canada.  (FACTS at ¶ 32).  While traveling, Mr. Kovensky suffered a devastating injury:  an acute aortic dissection, Type A, which is a tearing in the inner wall of the aorta causing blood to flow between the layers of the wall of the aorta, forcing the layers apart.  (FACTS at ¶ 32).  Portions of Mr. Kovensky's aorta -- the main artery leading from the heart -- literally separated.  (FACTS at ¶ 32).  Aortic dissection is a

---

[1]     References in the form "FACTS at ¶ __" are to Plaintiff Onex Credit Partners, LLC's Response to Defendant's Statement of Undisputed Facts and Counter-Statement of Undisputed Facts in Opposition to Summary Judgment submitted herewith.

medical emergency that frequently leads to death.  (FACTS at ¶ 33).  Mr. Kovensky was very fortunate: he was close to a major trauma center with a skilled and experienced cardiac surgeon. Mr. Kovensky received life-saving emergency open-heart surgery, resulting in the replacement of his aortic valve, aortic root, and ascending aorta.  (FACTS at ¶ 34).  While the surgery was successful, Mr. Kovensky continues to have a residual dissection in his aorta which could not be repaired; as a result, he must live with the possibility that his partially repaired aorta could once again dissect in another catastrophic event.  (FACTS at ¶ 35).

As a result of Mr. Kovensky's aortic dissection, and by or before February 2011, Mr. Kovensky became unable to perform, and in fact ceased performing, the substantial and material duties of his position.  (FACTS at ¶¶ 30, 36).  On February 24, 2011, Plaintiff submitted a notice of claim under the Policy for payment of the $5,000,000 benefit based on the permanent total disability of Mr. Kovensky.  (FACTS at ¶ 30).  In the notice of claim, it was explained that Mr. Kovensky (a) suffered a significant cardiac heart event on March 3, 2010; and (b) as a result, Mr. Kovensky was unable to perform the duties of his occupation.  (FACTS at ¶ 31).

International Risk Management Group ("IRMG") was retained to handle the claim by those certain underwriters at Lloyd's responsible for the Policy ("Underwriters"), and it is not yet known what oversight, if any, Underwriters provided during the claims review process.  (FACTS at ¶¶ 37, 57-58).  In response to requests for information from IRMG, Plaintiff promptly supplied a necessary Statement of Claim and an Attending Physician's Statement.  (FACTS at ¶ 38). Plaintiff additionally supplied (on numerous occasions) completed medical authorizations that allowed IRMG to obtain medical records relating to Mr. Kovensky. (FACTS at ¶ 38).

By letter dated October 21, 2011, (already almost nine months after submitting the claim) IRMG informed Plaintiff that it anticipated having a decision from Underwriters on Plaintiff's

claim within 30 days (i.e. by November 21, 2011). (FACTS at ¶ 40). Onex reasonably concluded that after nine months of thorough investigation, and complete cooperation from Onex and Mr. Kovensky, IRMG's investigation was near complete and that a coverage determination was imminent. (FACTS at ¶ 41). Just three weeks later, that representation was completely withdrawn. (FACTS at ¶ 42). IRMG stated for the first time that (1) IRMG would not issue a coverage determination until the conclusion of the Policy's 12-Month Elimination Period in March 2012; and (2) in the interim, IRMG would renew and significantly expand the investigation, seeking additional medical as far back as 2004 notwithstanding the fact that the acute medical event causing Mr. Kovensky's total permanent disability occurred over half a decade later in 2010.   (FACTS at ¶ 42). Onex, of course, had no choice but to continue to comply with IRMG's repeated demands for authorizations and information even in instances where the information requested had already (and in some instances repeatedly) been provided, lest it be accused of failing to cooperate and give IRMG another ground for refusing to honor its policy. (FACTS at ¶ 43).

IRMG's investigation also expanded well beyond medical records: IRMG serve overly broad, abusive requests for business records reaching into virtually every facet of Onex's business for a three year period.[2] After Onex objected to the significant expense this would require, IRMG agreed instead to accept full production of records for six months during a three

_____

[2]      Specifically, in May 2012 (six months after it had initially promised to provide its coverage and over a year after Plaintiff submitted its claim) IRMG requested that Plaintiff produce voluminous materials dating January 1, 2009 -- over a year before Mr. Kovensky's heart event -- to the present including essentially every document prepared by Onex in the course of that period, including all PPMs, offering memoranda, all marketing materials, presentations, reports, portfolio reviews, and portfolio updates created for the purpose of doing business. (FACTS at ¶¶ 45-46). There is no reason why such information could not have been requested months earlier if it were truly deemed relevant to a determination of Mr. Kovensky's medical status. (FACTS at ¶ 47).

year period that it chose; even production of just the six months required the review and production of approximately 150,000 pages of business records. (FACTS at ¶ 50).

IRMG's renewed investigation stretched well over a year. (FACTS at ¶¶ 40-41, 52). By that point in time, Plaintiff had lost all confidence that Atrium was advancing the claims analysis in good faith (and stated as much to IRMG). (FACTS at ¶ 48). On January 4, 2013, over fourteen months after having originally done so, IRMG represented that it 'hoped' the Underwriters would be in a position to render a decision on Plaintiff's claim within 30 days. (FACTS at ¶¶ 40, 51). Plaintiff did not receive the long awaited -- and fully expected -- denial letter until April 4, 2013, well over two years after Onex submitted its claim for benefits under the Policy. (FACTS at ¶ 52).

In the April 4, 2013 denial of coverage, Plaintiff purported to rely in part on two medical opinions and an opinion from a securities expert, and appears to have ignored statements from Mr. Kovensky's treating physician. (FACTS at ¶ 54). IRMG's "medical experts" -- while recognizing that Mr. Kovensky continues to have an unrepaired tear in his aorta, and that his treating physician has concluded he is permanently and totally disabled and cannot safely return to work -- appear to have nonetheless concluded that Mr. Kovensky is at miniscule risk of a further heart event, so long as he does not lift items over 100 pounds in weight. (FACTS at ¶ 55). In their view, he can safely return to the crushing stress and responsibility of his 60- to 70-hour work weeks as the co-Chief Executive Office at Onex, and should ignore the continuing physical pain and discomfort he experiences because (in their view) it is likely psychosomatic in nature. (FACTS at ¶ 55).

Onex filed this suit on September 20, 2013, seeking damages for both breach of contract and breach of the covenant of good faith and fair dealing in handling Plaintiff's claim. (FACTS

5

at ¶ 56).  Plaintiff specifically seeks damages for breach of the covenant of good faith and fair dealing both because of Defendant's delay of over two years – without valid reason – in making a coverage determination and Defendant's denial of coverage without valid reason and in reckless disregard of the fact that no valid reason supported such denial.  (FACTS at ¶ 56).

Defendant now moves for dismissal and/or summary judgment of Plaintiff's claim for breach of the covenant of good faith and fair dealing notwithstanding the fact that there has been no discovery whatsoever though which Plaintiff could test the purported reasons set forth by Defendant for the denial of insurance coverage.  (See, e.g. FACTS at ¶ 57-58).  Such discovery is necessary.  (Id.).  Defendant additionally requests that the Court strike its claim for attorney's fees in connection with this action.  Defendant's motion should be denied and Plaintiff should be afforded the opportunity to conduct discovery.

## ARGUMENT

Defendant has moved to dismiss Plaintiff's breach of covenant of good faith and fair dealing claim for failure to state a claim pursuant to Rule 12(b)(6) and in the alternative has moved for partial summary judgment on this cause of action.  Rule 12(d) provides:

> If on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are present to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Under Rule 12(b)(6), a motion to dismiss for failure to state a claim upon which relief may be granted must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Hoover v. Ronwin, 466 U.S. 558, 587 (1984); McLain v. Real Estate Bd. of New Orleans, Inc., 444 U.S. 232, 246 (1980).  A district court must accept any and all reasonable inferences derived from those facts.  Fellner v.

Tri-Union Seafoods, LLC, 539 F.3d 237, 242 (3d. Cir. 2008); Portadam, Inc. v. Seabright Ins. Co., 2011 WL 43010 at *2 (D.N.J. June 6, 2011).

A Rule 12(b)(6) motion examines the sufficiently of the complaint. The Court must view all allegations in the Complaint in the light most favorable to the plaintiff and draw all reasonable inferences therefrom. See LaSalandra v. Penn. General Ins. Co., 2004 WL 1636977 (E.D. Pa. July 12, 2004):

> The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.

See also, Fed. R. Civ. P. 8(a)(2). The issue before the Court "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir.1997) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir.2008) (relying on Twombly to hold that to survive a motion to dismiss a Complaint must assert "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element").

With regards to summary judgment Rule 56 states:

> .... [J]udgment shall be rendered forthwith if the pleadings, *depositions,* answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.....

However, summary judgment is only appropriate after a full and fair opportunity to engage in discovery and collect evidence applicable to a cause of action. The United States Supreme Court addressed this issue in Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Celotex sets forth the basic presumption that summary judgment is only appropriate "after

adequate time for discovery." 477 U.S. at 322. Indeed, on summary judgment, the nonmoving party is relieved of any burden it may have when it "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition[.]" Fed. R. Civ. P. 56(d). See also Anderson, 477 U.S. 242, 250 n. 5 (1986) ("[The] requirement [that a nonmoving party set forth material facts] in turn is qualified by Rule 56(f)'s[3] provision that summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."); McCray v. Maryland Dept. of Transp., --- F.3d ---, 2014 WL 3123272 (4th Cir. 2014) ("Summary judgment before discovery forces the non-moving party into a fencing match without a sword or mask. A Rule 56(d) motion must be granted "where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.").[4]

An inability to access facts material to one's case should be remedied by providing the nonmoving party additional time to conduct discovery. Rule 56(d) recognizes this, and "provides for the more just adjudication of disputes by ensuring that parties are not 'railroaded' by a premature motion for summary judgment." Croker v. Applica Consumer Prods., Inc., 2006 WL 626425 at *3 (D.N.J. Mar. 10, 2006) (citing Celotex).

To be sure, the Third Circuit has reversed numerous summary dismissals, where the nonmoving party has not had sufficient time to develop the evidence and record through discovery. For example, in Meinhardt, et al. v. UNISYS, 74 F.3d 420, 440 (3d Cir. 1996), the

---

[3]     Current Fed. R. Civ. P. 56(d) was formerly located at 56(f), and by 2010 Amendment was carried forward without substantial change.

[4]     Rule 56(d) states that where, as here, "a nonmovant shows by affidavit or declaration that, for specified reasons [i.e. a lack of discovery], it cannot present facts . . ." the court may defer considering a motion for summary judgment or deny it and allow time for discovery. Fed. R. Civ. P. 56(d).

Third Circuit held that because the record was incomplete, a request for summary judgment was entirely premature.  In <u>Cardenas v. Massey, et al.</u>, 269 F.3d 251, at 267 (3d Cir. 2001), the Third Circuit again held that summary judgment against a plaintiff was premature because of "factual issues outstanding as to the reasonableness of the parties." <u>See also</u>, <u>Ghana v. Holland</u>, 226 F.3d 175, 179 (3d Cir. 2000); <u>Hines v. Consolidated Rail Corporation</u>, 926 F.2d 262, 272 (3d Cir. 1991) (explaining the need for an evidentiary record before summary judgment).

Given the foregoing standards, and the fact that Plaintiff has not yet had the opportunity to take any discovery whatsoever, Defendants' motions pursuant to Rules 12(b)(6) and Rule 56 should be denied.

## A. PLAINTIFF SUFFICIENTLY PLED A CAUSE OF ACTION FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING BASED ON DEFENDANT'S BAD FAITH HANDLING AND DENIAL OF PLAINTIFF'S INSURANCE CLAIM

While New Jersey does not have a bad faith statute, the New Jersey Courts protect an insured by implying a duty of good faith and fair dealing in all insurance contracts. <u>Pickett v. Lloyds,</u> 131 N.J. 457, 621 A.2d 445 (App. Division 1991). Unfair and deceptive acts in the claim settlement process which support a claim of bad faith are set forth in N.J.S.A. 17:29B-4, which identifies insurer practices which are prohibited, including:

(b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

(c) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

(d) Refusing to pay claims without conducting a reasonable investigation based upon all available information;

(e) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;

(f) Not attempting in good faith to effectuate prompt, fair and equitable

settlements of claims in which liability has become reasonably clear;

(l) Delaying the investigation or payment of claims by requiring an insured, claimant or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information.

These regulations impose a standard of conduct upon insurers and evidence of non-compliance or deviation from the standards can support a claim for bad faith. Miglicio v. HCM Claim Management Corp., 288 N.J. Super. 331 (1995).

As an initial matter, there does not appear to be any dispute with regards to the standard governing a claim for breach of the covenant of good faith and fair dealing. "In the case of denial of benefits, bad faith is established by showing that no debatable reasons existed for denial of the benefits." Pickett v. Lloyds, 131 N.J. 457, 481 (1993). "In the case of processing delay, bad faith is established by showing that no valid reasons existed to delay processing the claim and the insurance company knew or recklessly disregarded the fact that no valid reasons supported the delay." Pickett, 131 N.J. at 481. Notably, however, Defendant fails to articulate any standard for pleading (as opposed to proving after full discovery) a claim for breach of the covenant of good faith and fair dealing.

Atrium appears to allege that it is entitled to dismissal of Plaintiff's good faith and fair dealing claim because in its April 4, 2013 letter denying coverage, Defendant purported to base its decision to deny coverage on its fact investigation, the advice of medical doctors and the advice of a securities expert. (Def. Br. at pp. 15-19). Defendant's apparent reliance on Tarsio v. Provident Ins. Co., 108 F. Supp. 2d 397 (D.N.J. 2000) in support of this proposition is misplaced, as there is no indication from the opinion that Tarsio was decided at the motion to dismiss stage and before the exchange of any discovery whatsoever. Indeed the exact opposite appears to be true. Id.

10

To the contrary, Portadam and <u>LaSalandra</u>, (unlike <u>Tarsio</u>) are on-point authority decided at the motion to dismiss stage. In both cases, the courts flatly rejected an insurer's attempts to gain dismissal of an insured's bad faith claims before discovery under facts markedly similar to those in issue here.

In <u>Portadam</u>, the defendant moved to dismiss alleging that the plaintiff failed to adequately plead a cause of action for bad faith denial of insurance benefits. This Court held that "[Plaintiffs] have plead[ed] that [Defendant] denied coverage under the Policy 'without colorable reason to disclaim coverage', and such allegation was sufficient at the motion to dismiss stage. <u>Portadam</u>, 2011 WL 43010 at *3. Here, Plaintiff has not only alleged that Defendants' failure to provide a coverage determination for over two years was without valid reason but also that Defendant's denial of coverage in light of the Mr. Kovensky's serious heart condition was made in reckless disregard of the fact that no valid reason could support such a denial of coverage. (First Amended Complaint at ¶¶ 28-29, 36-41).

<u>LaSalandra</u> addresses head on Defendant's allegations here.  In <u>LaSalandra</u>, as is the case here, an insurer attempted to obtain dismissal of an insured's bad faith claims before discovery. LaSalandra, 2001 WL 1636977 at *2.  In <u>LaSalandra</u>, as is the case here, the insurer purported to rely on the findings of hired consultants to argue that "when the results of two separate investigators support denial of a claim, logic and equity dictate that the claim must be rendered 'fairly debatable' at the very least." <u>Id.</u>  And in <u>LaSalandra</u>, as is the case here, the letter from the insurance company identifying such findings of its consultants and explaining denial of coverage was appended to the complaint.  Specifically, the insurer in <u>LaSalandra</u> argued as follows:

> Plaintiffs attached as Exhibit "C" to their Complaint a June 12, 2003 letter . . . the letter references inspections by two separate individuals, Dave Sorace of

11

Contemporary Adjustment Company and David Yelner an engineering consultant, and notes that the consensus recommendations were denial of the majority of Plaintiffs' claims because they were not caused by the claimed 'loss'.

The remainder of Plaintiffs' bad faith allegations focus on failure to undertake a prompt and thorough investigation and evaluation, failure to remit payment and failure to properly interpret applicable policy provisions. These assertions are in direct conflict with the information contained within Exhibit "C" to Plaintiffs' Complaint. Exhibit "C" references the two separate investigations which were undertaken, outlines the basis for denial of Plaintiffs' claim and quotes the policy language upon which the denial is based. The allegations of Plaintiffs' Complaint do no more than attempt to assert breaches of the good faith obligation of Defendant under the insurance contract at issue. Accordingly, on its face, Plaintiffs' Complaint fails to state a claim upon which relief can be granted with respect to Plaintiffs' demand for punitive damages.

(LaSalandra v. Penn. General Ins. Co., Inc., 2:03-cv-06805 (E.D. Pa.), at Dkt. No. 7 pp. 7-8). The court gave short shrift to such allegations made at the motion to dismiss stage. As the court explained, the defendant's purported reliance on hired consultants was not sufficient to obtain dismissal of the plaintiff's bad faith claims: "Defendants cite no cases where a court has dismissed a claim because investigations by two individuals were sufficient to render an insurance claim fairly debatable." Defendants here, like those in LaSalandra likewise fail to cite a single case under facts even remotely analogous to those alleged by Plaintiff (and Plaintiff is not aware of any that exist) where a court dismissed an insured's breach of the covenant of good faith and fair dealing claim simply because an insurer claimed to have conducted a reasonable investigation in its claim denial letter. Based on the foregoing authority alone, Defendant's motion should be denied.

## B. DEFENDANT'S ATTEMPT TO RELY ON ITS SELF-SERVING APRIL 4, 2013 LETTER DENYING INSURANCE COVERAGE DOES NOT OBVIATE PLAINTIFF'S RIGHT TO DISCOVERY

In the alternative, Defendant attempts to convert its motion into one for summary judgment by relying on the "uncontested" factual assertions in its April 4, 2013 denial letter,

12

which Defendant asserts have been incorporated by reference, and therefore admitted, in the First Amended Complaint. Defendant misses the mark. Whereas Plaintiff agrees that Defendant purports to have conducted a lengthy investigation, and whereas Plaintiff agrees that Defendant purports to have relied on its for-hire consultants in rendering its coverage determination, Plaintiff contests the reasonableness of Defendant's investigation (and the two-year delay in rendering a coverage decision), Plaintiff contests the reasonableness of Defendant's coverage position and its purported reliance on its third party consultants, Plaintiff contests the applicability of the Policy provisions on which Plaintiff based its denial of coverage, and Plaintiff reserves its right to call into question the validity of the consultants' credentials and reported findings. Granting summary judgment or otherwise dismissing this claim before Onex has had any opportunity to examine and challenge the methods and analysis of Atrium's experts, both medical and financial, would be premature. (See FACTS at ¶¶ 57-59). Nothing in the April 4, 2013 denial letter addresses these issues.

Case law concerning "advice of counsel" as a defense to claims for bad faith is instructive given Defendant's purported reliance on its for-hire experts as a defense to Plaintiff's claim for breach of the covenant of good faith and fair dealing.[5] Plaintiff has not located any cases decided under New Jersey law that hold that an insurer's reliance on counsel constitutes a defense at the motion to dismiss stage to an insured's claim for bad faith. However, case law of other jurisdictions is persuasive. For instance, in Szumigala v. Nationwide Mutual Ins. Co., 853 F.2d 274, 282 (5th Cir. 1988), the United States Court of Appeals for the Fifth Circuit held that "good-faith reliance upon advice of counsel may prevent imposition of punitive damages."

---

[5]     To date in this matter, Onex has not had a single communication with anyone at Lloyd's or Atrium, because those entities had farmed out their claims investigation and denial process to a procession of hired gun representatives and purported claims experts.

Significantly, the Fifth Circuit Court of Appeals added the following cautionary notes: "It is simply not enough for the carrier to <u>say</u> it relied on advice of counsel, however unfounded, and then expect that valid claims for coverage can be denied with impunity pursuant to such advice. The advice of counsel is but one factor to be considered in deciding whether the carrier's reason for denying a claim was arguably reasonable." <u>Id</u>. at 282 (emphasis added).

To establish an "advice of counsel" defense, a defendant must prove that while acting in good faith he sought and obtained the advice of an attorney, and made a full and accurate report or disclosure to this attorney, and then acted in accordance with the legal advice. <u>LoBiondo v. Schwartz</u>, 199 N.J. 62, 95 (2009).  <u>See also</u>, <u>Liss v. United States</u>, 915 F.2d 287, 291 (7th Cir. 1990). The "advice of counsel" defense, "based on good faith reliance on an attorney's advice[,] requires full disclosure . . . of all the material facts. . . ." <u>United States v. Martorano</u>, 767 F.2d 63, 66 (3d Cir. 1985).  Plaintiffs should be afforded an opportunity to test the legitimacy of any claim of advice of counsel. <u>See</u> <u>Glenmede Trust Co. v. Thompson</u>, 56 F.3d 476, 486 (3d Cir. 1995). In <u>Glenmede</u>, defendants in a fraud action offered as evidence an opinion letter written by its counsel concerning notification issues in a stock buy-back transaction.  Plaintiffs subsequently sought, and were granted, disclosure of the authoring law firm's entire file concerning, and all services performed in connection with, the buy-back transaction, including documents underlying the opinion letter. <u>Id.</u> at 479-80. The <u>Glenmede</u> court explained:

> The party opposing the defense of reliance on advice of counsel must be able to test what information had been conveyed by the client to counsel and vice-versa regarding that advice - whether counsel was provided with all material facts in rendering their advice, whether counsel gave a well-informed opinion and whether that advice was heeded by the client.

<u>Id.</u> at 486.  <u>See also In re ML-Lee Acquisition Fund II, L.P.</u>, 859 F. Supp. 765 (D. Del. 1994) ("In order for plaintiffs to have a fair and adequate opportunity to test and rebut Defendants'

allegations that they sought advice from counsel, plaintiffs are entitled to know, for example, whether the [] Defendants disclosed all material facts to counsel, whether counsel gave an otherwise well-informed opinion, did the [] Defendants follow the advice from counsel.").

Under this reasoning, a party who intends to defend against a claim of bad faith based even in part on its purported good-faith reliance on third-party attorneys or consultants must make <u>full</u> disclosure during discovery sufficient to allow Plaintiff to litigate the propriety of such a defense. Discovery is required so that the record may be expanded in support of plaintiff's claim.

An insurer whose actions are bent on advancing one goal - escaping its own liability at whatever consequence to its insured - is liable for bad faith. <u>Tannerfors v. American Fidelity Fire Ins. Co.</u>, 397 F. Supp. 141, 158 (D.N.J. 1975). The insurer "must accord the interest of its insured the same faithful consideration it gives its own interests: since the interest of one or the other may be imperiled at the instant decision, the fairest method of balancing the interest is for the insurer to treat the claim as if it were alone liable for the entire amount." <u>Id.</u> (citing <u>Kaudern v. Allstate Ins. Co.</u>, 277 F. Supp. 83, 88) (D.NJ. 1967).

Moreover, the failure to conduct a timely claims investigation can be actionable bad faith. <u>See</u> <u>Taddei v. State Farm Indem. Co.</u>, 401 N.J. Super. 449, 462 (App. Div. 2008) (quoting <u>Skating v. Aetna Ins. Co.</u>, 799 A.2d 997, 1011 (R.1.2002):

> the insurer's failure to conduct an appropriate and timely investigation may subject the insurer to bad faith liability notwithstanding the merits of the claim. Although a fairly debatable claim is a necessary condition to avoid liability for bad faith, it is not always a sufficient condition. Rather, we are satisfied that the appropriate inquiry is whether there is sufficient evidence from which reasonable minds could conclude that in the investigation, evaluation and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable.

Even on the current undeveloped, factual record there are several facts to support a finding that Defendant has acted in bad faith with respect to this claim. As explained in detail supra, Plaintiff submitted a notice of claim for payment under the Policy based on the total disability of Mr. Kovensky – who suffered a substantial cardiac event and has been unable to return to his material and substantial duties as co-CEO -- on February 24, 2011. Plaintiff promptly complied with all requests for information and was advised on October 21, 2011 that IRMG anticipated providing a coverage determination within 30 days. Just three weeks later, IRMG abruptly reversed course. After that time Defendant appears to have meticulously sought out consultants to aid it in bolstering its denial of coverage letter.

It was not until months after IRMG reported that it anticipated rendering a coverage decision within 30 days that IRMG purports to have obtained a report from a Cardiologist relating to Mr. Kovensky that IRMG states contradicts Plaintiff's disability claim And it was not until over a year after IRMG received the claim that IRMG first requested thousands of pages of records relating to Plaintiff's business and having nothing whatsoever to do with Mr. Kovensky's medical status and that could have been requested, had there been good faith in the claim review process, when Plaintiff's claim was first filed. Throughout this time, IRMG repeatedly requested information that had already been provided to it by Plaintiff for no understandable reason.

On January 4, 2013, over fourteen months after having originally done so, IRMG once again represented that it hoped the Underwriters would be in a position to render a decision on Plaintiff's claim within 30 days. But yet again there was additional delay, and Plaintiff inexplicably did not receive a final determination on coverage until April 4, 2013, over two years after submitted its claim for benefits under the Policy.

16

Against this backdrop, Plaintiff has not had the opportunity to conduct discovery with regards to any statement made in the April 4, 2013 denial of coverage. (FACTS at ¶¶ 57-59). Nor has Plaintiff been given an opportunity to test Defendant's reasons for delaying a coverage determination for over two years. (Id.) Plaintiff requires such discovery, including discovery as to whether Atrium acted in good faith when its hired agent IRMG (a) retracted its October 21, 2011 statement that it anticipated providing a determination of coverage within 30 days; (b) sought out third-party consultants only after making this representation; and (c) delayed providing a coverage determination for over two years. (Id.). Plaintiff should be entitled to discovery regarding (a) the credentials of the consultants hired by IRMG and (b) whether IRMG made full and accurate disclosure of facts to those consultants after delaying its coverage determination. (Id.). Plaintiff also has not had the opportunity to obtain discovery with regards to IRMG's delay of 15 months prior to requesting voluminous business documents from Plaintiff having nothing whatsoever to do with Mr. Kovensky's medical condition or Underwriters' engagement of IRMG and/or any oversight of IRMG's work. (Id.).

The Court should not countenance Defendant's attempt to railroad Plaintiff with premature allegations, and instead should allow Plaintiff a full and fair opportunity to engage in the foregoing discovery and should dismiss Defendant's alternative claim for partial summary judgment. Fed. R. Civ. P. 56(d); Celotex, 477 U.S. at 322; Croker, 2006 WL 626425 at *3. 59.

The foregoing discovery is solely within the hands of Defendant and its agent, has not been previously obtained because the parties have not yet had any opportunity for discovery in this matter, and based on the information currently known is necessary to respond to (and is likely to preclude) summary judgment in Defendant's favor. (FACTS at ¶ 59).

17

## C. THE COURT SHOULD NOT DISMISS PLAINTIFF'S CLAIM FOR ATTORNEY'S FEES

Finally, Defendant requests that the Court strike Plaintiff's request for attorney's fees. Once again, Defendant's analysis is faulty.

New Jersey Court Rule 4:42-9(a)(6) states that fees may be recovered "in an action upon a liability or indemnity policy of insurance, in favor of a successful claimant." R. 4:42-9(a)(6). The Rule was promulgated "both to discourage groundless disclaimers and to provide more equitably to the insured the benefits of the insurance contract without the necessity of obtaining a judicial determination that the insured, in fact, is entitled to such protection." Guarantee Ins. Co. v. Saltman, 217 N.J. Super. 604, 609 (App. Div. 1987). "The theory is that one covered by a policy is entitled to the full protection provided by the coverage, and that benefit should not be diluted by the insured's need to pay counsel fees in order to secure its rights under the policy." Myron Corp. v. Atlantic Mut. Ins. Corp., 407 N.J. Super. 302, 310 (App. Div. 2009).

The award of attorney's fees pursuant to Rule 4:42-9(a)(6) is discretionary and there is no reason for the Court to rule at this premature stage that Plaintiff cannot, under any state of facts, recover attorney's fees at the conclusion of this action. Indeed, New Jersey case law explains that an award of attorney's fees under facts strikingly similar to this case may be appropriate. See, Bello v. Merrimack, 2012 WL 2848642 at *14 (App. Div. July 12, 2012).

In Bello, the plaintiff-insured challenged an insurers' denial of coverage under a homeowners insurance policy and alleged claims for bad faith in both delay and denial of coverage. Id. at **1, 6. At the close of the plaintiff's evidence during a jury trial, the court dismissed the insured's claim for bad faith delay but allowed the claim for bad faith denial of benefits to proceed over the objection of the defendant. Id. at *5. The jury found in favor of the insured, and the court thereafter awarded the plaintiff attorney's fees as well. Id. at *5. The

insurer appealed, arguing that because it had relied on the advice of a consultant in denying coverage, such reliance demonstrated that its denial of coverage was fairly debatable and not grounded in bad faith as a matter of law. The insurer also argued that the court's award of attorney's fees was improper under New Jersey law. The New Jersey Appellate Court rejected both of the insurer's claims.

As concerns the award of attorney's fees in particular, the New Jersey Appellate Court refused to reverse the award:

> The trial judge viewed the award of attorney's fees as foreseeable because the damages resulted from defendant's bad faith denial of plaintiff's claim. A claim for a bad faith denial of a claim sounds in contract, such that "the familiar principles of contract law will suffice to measure the damages." Pickett, supra, 131 N.J. at 474.

> Generally, shifting of attorneys' fees is disfavored. Litton, supra, 200 N.J. at 385. However, "a prevailing party can recover those fees if they are expressly provided for by statute, court rule, or contract." Packard–Bamberger & Co., Inc. v. Collier, 167 N.J. 427, 440 (2001). Rule 4:42–9(a)(6) provides an award of attorneys fees is allowable "[i]n an action upon a liability or indemnity policy of insurance, in favor of a successful claimant."

Id. at *14. Thus, in a first-party liability action with facts markedly similar to those alleged in this matter, an award of attorney's fees at the trial court's discretion was deemed entirely proper and Plaintiff's pleadings requesting same here should not be stricken.

## CONCLUSION

For the foregoing reasons, Defendant's motion should be denied in all respects and Plaintiff should be entitled to obtain discovery concerning it claim for breach of the covenant of good faith and fair dealing.

Dated: February 18, 2014                    Respectfully submitted,


                                             _s/_ David R. King_____

19

David R. King, Esq.
Kathleen H. Robinson, Esq.
HERRICK, FEINSTEIN LLP
210 Carnegie Center
Princeton, New Jersey 08540
(609) 452-3800 (T)
(609) 520-9095 (F)