NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ONEX CREDIT PARTNERS, LLC, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| ATRIUM 5 LTD., an Underwriter at : | Civil Action No. 13-5629 (ES) |
| Lloyd's, London individually, and in its : | |
| capacity as representative Underwriter : | OPINION |
| at Lloyd's, London for certain : | |
| subscribing Underwriters at Lloyd's, : | |
| London who subscribed to : | |
| Policy # RC967307/127, : | |
| : | |
| Defendant. : | |

**SALAS, DISTRICT JUDGE**

**I.  Introduction**

This action involves a dispute over insurance coverage.  Plaintiff Onex Credit Partners, LLC ("Onex" or "Plaintiff") seeks payment of benefits for the alleged disability of an Onex executive under an insurance policy issued by defendant Atrium 5 Ltd. ("Atrium" or "Defendant").  Atrium denies that Onex is entitled to benefits.

Currently pending before the Court is Atrium's partial motion to dismiss or, in the alternative, for partial summary judgment, and motion to strike claim for attorneys' fees. (D.E. No. 16).  Atrium's motion primarily raises the following issue: whether Onex can maintain a bad-faith claim against Atrium.

The Court has jurisdiction under 28 U.S.C. § 1332 and resolves Atrium's motion without oral argument under Federal Rule of Civil Procedure 78(b). For the reasons below, the Court GRANTS Atrium's motion.

## II. Background[1]

### A. The Insurance Policy

In October 2007, Onex obtained an insurance policy from Atrium. (D.E No. 19, Plaintiff's Response to Defendant's Statement of Undisputed Facts ("Onex's RSUMF") ¶ 1; D.E. No. 23, Defendant's Response to Plaintiff's Counter Statement of Undisputed Facts ("Atrium's RSUMF") ¶ 27). Onex's policy provides, *inter alia*, entitlement to a $5 million lump sum payment if Onex's then Co-Chief Executive Officer Stuart Kovensky ("Mr. Kovensky")—*i.e.*, the insured—suffered permanent and total disability. (Onex's RSUMF ¶ 2; Atrium's RSUMF ¶¶ 26, 28).

The policy defines "permanently and totally disabled" as follows:

> as a result of a covered Injury or Sickness, the Insured is permanently and totally unable to perform the substantial and material duties of his or her regular occupation as shown on the Schedule for the entire Elimination Period and is not expected to recover for the remainder of his or her life. The Insured must also be under the regular care of a Physician that is appropriate for the condition causing the disability.

(D.E. No. 10, Exhibit A to First Amended Complaint ("Ex. A") at 17).

The policy defines the "Elimination Period" as 12 months. (*Id.* at 8; Atrium's RSUMF ¶ 42). There are several exclusions in the policy, including for "[a]ny psychosis, neurosis, or neuropsychiatric illness including, but not limited to, any emotional anxiety or depression illness

---

[1] These background facts are undisputed unless otherwise noted. Additional facts or allegations are provided elsewhere in this Opinion as relevant to the Court's analysis.

for which any form of psychiatric or psychological therapy is indicated or received." (Ex. A at 13).

### B. Onex's Claim for Benefits and Atrium's Review

As noted above, Mr. Kovensky is the former Co-CEO of Onex. (Atrium's RSUMF ¶ 26). His job duties allegedly involved investment and portfolio management. (D.E. No. 9 ("Compl.") ¶ 19). His duties also allegedly included marketing activities that required extensive travel, as well as investor relations. (*Id.*). In addition, Mr. Kovensky's duties allegedly included "financial, operations, administration, regulatory compliance issues, and human resource management." (*Id.* ¶ 20).

On March 3, 2010, Mr. Kovensky suffered an acute aortic dissection, which is a significant heart event. (Onex's RSUMF ¶ 6; Atrium's RSUMF ¶ 32). This occurred during the policy period while he was allegedly traveling on business. (Onex's RSUMF ¶ 32; Atrium's RSUMF ¶ 32; *see also* Ex. A at 8 (identifying the policy term as being from October 31, 2007 to October 31, 2010)).

On February 24, 2011, Onex's general counsel submitted a notice of claim under the policy for a $5 million payment based on Mr. Kovensky's condition. (Atrium's RSUMF ¶ 30). In the notice of claim, Onex's general counsel explained that, on March 3, 2010, Mr. Kovensky suffered a cardiac event and, therefore, Mr. Kovensky was unable to perform his occupational duties. (*Id.* ¶ 31).

Atrium designated International Risk Management Group ("IRMG") to help handle Onex's claim. (Atrium's RSUMF ¶ 37). Accordingly, Onex and IRMG corresponded about various issues regarding Onex's claim.

Briefly, in a letter dated March 7, 2011—but purportedly received on March 28, 2011—

IRMG indicated to Onex that it would be handling Onex's claim.  (D.E. No. 20 ("Gutman Decl.") ¶ 6; D.E. No. 20-2 ("Ex. B to Gutman Decl.")).  In a letter dated October 21, 2011, IRMG provided a "periodic claim status report," indicating that additional materials would be needed and that it was "hopeful" that a claim decision would be made within thirty days.  (D.E. No. 20-3 ("Ex. C to Gutman Decl.")).  In a subsequent "periodic claim status report" dated November 15, 2011, however, IRMG indicated that a decision could not be reached until after a 12-month "elimination period" and that IRMG required additional information and documentation.  (D.E. No. 20-4 ("Ex. D to Gutman Decl.")).

In another "periodic claim status report" dated May 24, 2012, IRMG responded to Onex's communications and, furthermore, requested documents "related to Mr. Kovensky's duties and responsibilities at ONEX Credit Partners, LLC, and/or with the funds that ONEX manages."  (D.E. No. 20-5 ("Ex. E to Gutman Decl.")).  Onex's general counsel initially objected "to the specific expense that compliance" with IRMG's request would require, but ultimately agreed to produce documentation.  (Gutman Decl. ¶ 16).

Specifically, in early December 2012, Onex sent IRMG 150 thousand pages of documents.  (Onex's RSUMF ¶ 20; Atrium's RSUMF ¶ 50).  Then, in a letter dated January 4, 2013, IRMG confirmed receipt of these documents and represented that it "hope[d]" to issue a decision on Onex's claim in thirty days.  (D.E. No. 20-6 ("Ex. F to Gutman Decl.")).  Ultimately, Atrium denied coverage—through IRMG—in an April 4, 2013 letter (the "Denial Letter").  (D.E No. 10-1, Exhibit B to First Amended Complaint ("Ex. B"); Onex's RSUMF ¶ 10).

### C. Atrium's Decision

In the Denial Letter, *inter alia*, IRMG reviewed relevant provisions of Onex's policy such as the 12-month elimination period and certain definitions and exclusions.  (*See* Ex. B at 2-

5).  The Denial Letter also confirmed that Onex supplied materials in support of its benefits claim, including an April 19, 2011 "Insured Statement" completed by Mr. Kovensky that had information about his occupational duties and his claimed disability—namely, that he was totally disabled from March 2010 to June 6, 2010, partially disabled from June 6, 2010 to mid-February 2011, and totally disabled after mid-February 2011.  (*See id.* at 5–7).

The Denial Letter also reviewed an April 26, 2011 "Attending Physician's Statement" by Dr. Allan Schwartz that set forth, *inter alia*, Mr. Kovensky's diagnosis (*i.e.*, "S/P Repair Acute Aortic Dissection"), the date of onset (*i.e.*, March 3, 2010), dates of total disability (*i.e.*, from March 1, 2011 onwards), the dates of partial disability (*i.e.*, from March 3, 2010 to February 2011), that his "condition could worsen but [was] not expected to improve," and that "no work related travel" is permitted and stress must be "limit[ed]."  (*See id.* at 7).

Additionally, the Denial Letter reviewed a February 10, 2012 "updated Attending Physician's Statement"—completed by Dr. Schwartz at IRMG's request—that set forth, *inter alia*, the dates of partial and total disability as being "indefinite[]" and again that "[h]is condition could get worse, [but] was not expected to improve."  (*Id.* at 7–8).  The Denial Letter provided that, in this updated statement, Mr. Kovensky's restrictions upon return to work again include "no . . . stress or travel."  (*Id.* at 8).

Furthermore, the Denial Letter reviewed and/or compiled the following: which healthcare providers IRMG obtained medical records from, (*see, e.g.*, *id.* at 8); a February 13, 2012 Onex response to a January 30, 2012 IRMG supplemental inquiry regarding Mr. Kovensky's ongoing work activities since March 1, 2011, (*see id.* at 8–10); and a March 30, 2012 Onex response to an additional March 3, 2012 IRMG inquiry, (*see id.* at 10–11).

The Denial Letter also conveyed that IRMG consulted with Dr. Colman Ryan (a cardiologist who is board certified in internal medicine with a specialty in cardiovascular disease) and Dr. Alex Zapolanski (a cardiac surgeon at the heart and vascular institute who is board certified in surgery and thoracic surgery). (*Id.* at 12–13).

Finally, the Denial Letter indicated that IRMG consulted Mr. John Main, a securities industry expert. (*Id.* at 14). The Denial Letter appears to link this consultation to Onex's public representations involving Mr. Kovensky's role and activities during certain time periods. (*See id.* at 11, 14). Specifically, the Denial Letter noted that, in his April 19, 2011 "Insured Statement," Mr. Kovensky represented that he was totally disabled as of mid-February 2011 and that, on February 24, 2011, Onex's general counsel submitted a notice of claim that Mr. Kovensky was permanently and totally disabled. (*Id.* at 11). But, as set forth in the Denial Letter, Mr. Maine concluded that Mr. Kovensky "continued to be actively involved in marketing and investor relations, portfolio and investment management, investment research, human resource management, regulatory compliance, and finance/operations/administrative activities at Onex"—*after* February 2011. (*Id.* at 14).

In sum, the Denial Letter concluded that denial of benefits is justified "on several grounds" as follows:

> First, Mr. Kovensky fully recovered from his aortic dissection after successful surgery . . . [and that] Onex does not meet the Policy requirement that as a direct result of sickness which manifests itself during the Policy period, Mr. Kovensky had a permanent total disability which commenced within 365 days. Here the available medical information establishes that Mr. Kovensky has not suffered a disabling physical condition of any kind, arising from his March 3, 2010 aortic dissection, or otherwise.
>
> Additionally, this claim is denied because Onex fails to satisfy the Policy requirement that Mr. Kovensky be permanently totally disabled from his occupation. The available information establishes

> that since June 6, 2010, Mr. Kovensky has been physically capable of performing the substantial and material duties of his occupation and in fact has been performing those duties at least through May 2012.
>
> Finally, to the extent that Mr. Kovensky's claimed inability to perform the substantial and material duties of his occupation is caused by or is a result of, in whole or in part, psychological issues and/or emotional anxiety related to concern about his heart condition for which he received psychological therapy, such claimed loss is specifically excluded.

(*Id.* at 22–23).

### D. The Instant Action Against Atrium[2]

Onex asserts the following two counts against Atrium: (1) breach of contract relating to Onex's policy and Atrium's denial of benefits payments allegedly owed to Onex, (Compl. ¶¶ 30–35); and (2) breach of the covenant of good faith and fair dealing, (*id.* ¶¶ 36–41).

Notably, for this second count, Onex alleges that (a) "[n]o valid reason existed for [the] substantial delay in processing Onex's claim and Defendant knew or recklessly disregarded the fact that no valid reasons supported such substantial delay" and (b) "no valid reason existed for denial of coverage, and Defendant knew or recklessly disregarded the fact that no valid reasons supported their denial of coverage." (*Id.* ¶¶ 39–40). Onex seeks, *inter alia*, (1) a declaration that Mr. Kovensky is permanently and totally disabled under the policy; and (2) an award of $5 million in damages, plus prejudgment interest, costs, and attorneys' fees. (*Id.* at 6-7).

Under Federal Rule of Civil Procedure 12(b)(6), or in the alternative Federal Rule of Civil Procedure 56, Atrium moves to dismiss Onex's second count—*i.e.*, the breach of covenant of good faith and fair dealing count. Atrium also moves to strike Onex's request for attorneys' fees under Federal Rule of Civil Procedure 12(f).

---

[2] This matter was originally before the Honorable Dennis M. Cavanaugh, U.S.D.J. On April 11, 2014, it was reassigned to the Undersigned.

**III.     Standard of Review**

    **A. Motion to Dismiss for Failure to State a Claim**

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"When reviewing a motion to dismiss, '[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom.'" *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)).  But the court is not required to accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

    **B. Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine" issue of material fact exists for trial "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The movant bears the initial burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof at trial, the moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the movant meets this burden, the non-movant must then set forth specific facts that demonstrate the existence of a genuine issue for trial. *Id.* at 324; *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010).

Notably, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. But the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Swain v. City of Vineland*, 457 F. App'x 107, 109 (3d Cir. 2012) (stating that the non-moving party must support its claim "by more than a mere scintilla of evidence").

Finally, a motion to dismiss framed in the alternative as a motion for summary judgment may properly be treated as a motion for summary judgment. *See Scott v. Graphic Commc'ns Int'l Union, Local 97-B*, 92 F. App'x 896, 902–03 (3d Cir. 2004); *see also Carver v. Plyer*, 115 F. App'x 532, 536 (3d Cir. 2004) ("[M]otions for summary judgment that are presented to the court as motions in the alternative constitute sufficient notice to a non-moving party that the court may convert a motion to dismiss into a motion for summary judgment.").

### IV. Discussion

#### A. The Court Must Dismiss Onex's Bad-Faith Claim

##### 1.      The Parties' Arguments

Atrium asserts that Onex seeks to transform this "simple contract dispute" into "an insurance bad faith claim." (D.E. No. 16-3, Memorandum of Law in Support of Atrium's Motion to Dismiss or, in the Alternative, for Partial Summary Judgment, and Motion to Strike Claim for Attorney Fees ("Atrium's Mov. Br.") at 1). Atrium contends that "the uncontradicted facts" in the Denial Letter "defeat any claim that [D]efendant acted in bad faith." (*Id.* at 11).

Atrium analogizes this action to *Tarsio v. Provident Insurance Company*, 108 F. Supp. 2d 397 (D.N.J. 2000). (*Id.* at 15–16). It argues that, like *Tarsio*, the instant action involves denial of a disability claim following extensive investigation. (*Id.* at 16). Citing the Denial Letter, Atrium argues that the detailed explanation for denial of coverage contradicts, as a matter of law, any claim that "no valid reason existed for denial of coverage." (*Id.* at 17 (quoting Compl. ¶ 40)).

Indeed, Atrium avers that, under New Jersey law, Onex must show that the insurer lacked a "fairly debatable" reason for its refusal to pay benefits—and that the Denial Letter raises a question of fact to this effect, thus requiring dismissal of Onex's bad-faith claim. (*See id.* at 2, 17). And, as for delay, Atrium contends that Onex's complaint and exhibits show that "there was no unreasonable delay in reaching the decision of non-coverage in April 2013." (*Id.* at 17).

In sum, Atrium argues that—under either Rule 12(b)(6) or Rule 56—there are issues of material fact regarding the basis for denial or any alleged delay, and therefore the "issue is deemed 'fairly debatable' and there can be no basis for a bad faith claim for relief." (*See* D.E. No. 21, Reply to Plaintiff's Opposition to Atrium's Motion to Dismiss or, in the alternative, for

Partial Summary Judgment, and Motion to Strike Claim for Attorney Fees ("Atrium's Reply Br.") at 1–2).

In opposition, Onex proclaims that no authority compels dismissal of "an insured's breach of the covenant of good faith and fair dealing simply because an insurer claimed to have conducted a reasonable investigation in its claim denial letter." (D.E. No. 18, Memorandum of Law in Opposition to Atrium's Motion to Dismiss or, in the alternative, for Partial Summary Judgment and to Strike Claim for Attorneys Fees and in Support of Request for Discovery Pursuant to Rule 56(d) ("Onex's Opp. Br.") at 12).

Onex asserts that Atrium's position misses the mark because Onex contests the following: (1) "the reasonableness of Defendant's coverage position and its purported reliance on its third party consultants"; and (2) "the applicability of the Policy provisions on which Plaintiff based its denial of coverage." (*Id.* at 13). Onex argues that it has the "right to call into question the validity of the consultants' credentials and reported findings"—and that it would be "premature" to dismiss its bad-faith claim "before Onex has had any opportunity to examine and challenge the methods and analysis of Atrium's experts, both medical and financial." (*Id.*).

Onex appears to analogize Atrium's position to an "advice of counsel" defense, arguing that a party defending against a bad-faith claim based "on its purported good-faith reliance on third-party attorneys or consultants must make <u>full</u> disclosure during discovery sufficient to allow Plaintiff to litigate the propriety of such a defense." (*See id.* at 13–15). And Onex claims that it has not had the opportunity to conduct discovery regarding any statement made in the Denial Letter, "Defendant's reasons for delaying a coverage determination for over two years," or "with regards to IRMG's delay of 15 months" before requesting certain "voluminous business

11

documents" from Onex. (*Id.* at 17). In fact, Onex requests certain discovery under Federal Rule of Civil Procedure 56(d). (*Id.* at 1, 6, 8 n.4, 17; *see also* Gutman Decl. ¶¶ 19–21).

Nevertheless, Onex contends that, even "on the current undeveloped, factual record," Onex's bad-faith claim is supported. (Onex's Opp. Br. at 16). To that extent, Onex cites several events, including the following: its initial February 24, 2011 notice of claim; the October 21, 2011 letter indicating that IRMG anticipated providing a coverage decision within thirty days; Atrium's May 24, 2012 request for "thousands of pages of records relating to Plaintiff's business [that had] nothing whatsoever to do with Mr. Kovensky's medical status"; the January 4, 2013 letter indicating that IRMG anticipated providing a coverage decision within thirty days; and, finally, the April 4, 2013 Denial Letter. (*See* Onex's Opp. Br. at 16).

### 2. Duty of Good Faith and Fair Dealing in the Insurance Context[3]

"Under New Jersey law, 'an insurance company owes a duty of good faith to its insured in processing a first-party claim.'" *Granelli v. Chi. Title Ins. Co.*, No. 13-1024, 2014 WL 2724459, at *5 (3d Cir. June 17, 2014) (quoting *Pickett v. Lloyd's*, 621 A.2d 445, 450 (N.J. 1993)); *see also Fuscellaro v. Combined Ins. Grp., Ltd.*, No. 11-0723, 2011 WL 4549152, at *5 (D.N.J. Sept. 29, 2011) ("The New Jersey Supreme Court recognized a cause of action and established the governing standard for an insurance company's bad faith refusal to pay a claim in *Pickett v. Lloyd's*, 131 N.J. 457, 621 A.2d 445 (N.J. 1993).").

"[T]o establish a claim for bad faith in the insurance context, a plaintiff must show two elements: (1) the insurer lacked a 'fairly debatable' reason for its failure to pay a claim, and (2)

---

[3] The parties agree that New Jersey law governs the Court's interpretation of the Policy. (*See* Atrium's Mov. Br. at 14–16; Onex's Opp. Br. at 9–10). To be sure, Onex makes passing reference to N.J.S.A. § 17:29B-4, but ultimately concedes that "there does not appear to be any dispute with regards to the standard governing a claim for breach of the covenant of good faith and fair dealing." (Onex's Opp. Br. at 9–10). Indeed, both parties recognize that *Pickett v. Lloyd's*, 621 A.2d 445, 450 (N.J. 1993) provides the relevant standard for such a claim. (Atrium's Mov. Br. at 14; Onex's Opp. Br. at 9–10).

the insurer knew or recklessly disregarded the lack of a reasonable basis for denying the claim." *Ketzner v. John Hancock Mut. Life Ins. Co.*, 118 F. App'x 594, 599 (3d Cir. 2004) (citing *Pickett*, 621 A.2d at 454). "A plaintiff may also demonstrate an insurer's bad faith when the insurer unreasonably delays the processing of a valid claim, and the insurer knows or recklessly disregards the fact that the delay is unreasonable." *Tripodi v. Universal N. Am. Ins. Co.*, No. 12-1828, 2013 WL 6903944, at *10 (D.N.J. Dec. 31, 2013) (citing *Pickett*, 621 A.2d at 454). "In a delay case, 'bad faith is established by showing that no valid reasons existed to delay processing the claim and the insurance company knew or recklessly disregarded the fact that no valid reasons supported the delay.'" *Granelli*, 2014 WL 2724459, at *5 (quoting *Pickett*, 621 A.2d at 457) (internal textual modifications omitted).

"Although applied in slightly different circumstances, the 'fairly debatable' and 'unreasonable delay' tests are 'essentially the same.'" *Johnson v. Liberty Mut. Ins. Co.*, No. 10-0494, 2010 WL 2560489, at *2 (D.N.J. June 24, 2010) (quoting *Pickett*, 621 A.2d at 454); *see also Tripodi*, 2013 WL 6903944, at *11 ("[T]o show that an insurer has acted in bad faith, a plaintiff must demonstrate that no fairly debatable reason exists for denying or delaying the processing of a claim.").

> Significantly, to establish a bad-faith claim, a plaintiff
>> must be able to establish, as a matter of law, a right to summary judgment on the substantive claim; if plaintiff cannot establish a right to summary judgment, the bad faith claim fails. In other words, if there are material issues of disputed fact which would preclude summary judgment as a matter of law, an insured cannot maintain a cause of action for bad faith.

*Ketzner*, 118 F. App'x at 599 (citation omitted); *see also Fuscellaro*, 2011 WL 4549152, at *5 ("[I]f there are material issues of disputed fact as to the underlying benefits claim, an insured cannot maintain a cause of action for bad faith.").

### 3. Analysis

As an initial matter, the Court treats Atrium's motion under Federal Rule of Civil Procedure 56. Atrium framed its motion in the alternative as a summary judgment motion under Rule 56. Thus, Onex had sufficient notice that the Court may resolve Atrium's motion under Rule 56. *See Carver*, 115 F. App'x at 536. Indeed, in opposition to Atrium's motion, Onex submitted a declaration with several exhibits for the Court's consideration. And both parties submitted statements and/or counterstatements of material facts. Thus, the Court properly treats Atrium motion as one for summary judgment. *See also* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").

*First*, Onex alleges that "no valid reason existed for denial of coverage, and Defendant knew or recklessly disregarded the fact that no valid reasons supported their denial of coverage." (Compl. ¶ 40). But neither the allegations nor the record demonstrate that Onex would be entitled to summary judgment on Onex's underlying benefits claim. And this precludes Onex's bad-faith claim. *See Pickett*, 621 A.2d at 454 ("Under the 'fairly debatable' standard, a claimant who could not have established as a matter of law a right to summary judgment on the substantive claim would not be entitled to assert a claim for an insurer's bad-faith refusal to pay the claim.").

Tellingly, Onex argues that it "contests the reasonableness of Defendant's coverage position and its purported reliance on its third party consultants," that it "contests the applicability of the Policy provisions" used to deny coverage, and it "reserves its right to call into

question the validity of the consultants' credentials and reported findings." (Onex's Opp. Br. at 13).

Thus, at its root, this is a contract dispute. Indeed, Onex's position reveals that there is a factual dispute over its underlying benefits claim. And, under New Jersey law, the Court must therefore dismiss Onex's claim for alleged bad-faith refusal to pay benefits. *See Tarsio*, 108 F. Supp. 2d at 401–02 (dismissing bad-faith claim where issues of fact precluded summary judgment on insured's underlying benefits claim and explaining that, "[i]f factual issues exist as to the underlying claim (i.e., questions of fact as to whether plaintiff is entitled to insurance benefits-plaintiff's first cause of action), the Court must dismiss plaintiff's second cause of action-the 'bad faith' claim"); *see also Dare Invs., LLC v. Chi. Title Ins. Co.*, No. 10-6088, 2011 WL 2600594, at *12 (D.N.J. June 29, 2011) ("[I]n light of the ambiguity in the title policy and Dare's reasonable expectations thereunder, the Court cannot find that Dare is clearly entitled to coverage under the title policy and grant summary judgment in favor of its claims for breach of contract. Accordingly, Dare's claim for bad faith is dismissed.").

*Second*, Onex alleges that "[n]o valid reason existed for [the] substantial delay in processing Onex's claim and Defendant knew or recklessly disregarded the fact that no valid reasons supported such substantial delay." (Compl. ¶ 39). But, to survive summary judgment on this claim, Onex "must point to . . . disputes of fact establishing both that [Atrium] had no valid reason to delay processing the claim and that [Atrium] knew it had no valid reason." *See Tucci v. Hartford Fin. Servs. Grp., Inc.*, No. 08-4925, 2011 WL 2555379, at *14 (D.N.J. June 27, 2011).[4]

---

[4] Moreover, the Court notes that, "[u]nder the 'fairly debatable' standard, a claimant must establish a right to summary judgment on the substantive claim in order to be entitled to assert a claim against the insurer for bad faith refusal to pay *or delay in processing*." *Tripodi*, 2013 WL 6903944, at *11 (emphasis added) (textual modifications omitted). Thus, Onex's bad-faith delay claim should fail for the same reason that Onex's bad-faith *refusal-to-pay*

Here, although Onex cites a two-year plus processing period, the Policy unequivocally requires a 12-month elimination period.  Therefore, Atrium's supposed delay is closer to one year.  And, as detailed above, a portion of this timeframe involved Onex's objection to IRMG's May 2012 request for documents and Onex's eventual production in early December 2012.

To be sure, Onex's bad-faith delay claim seems to rest primarily on two issues: (1) Atrium's representations that it would have a coverage determination within thirty days (*i.e.*, in October 2011 and January 2013) and (2) and Atrium's May 2012 request for documentation "<u>over a year</u> after IRMG received" Onex's benefits claim. (*See* Onex's Opp. Br. at 16–17).  But "[n]either negligence nor mistake is sufficient to show bad faith—rather, a plaintiff must demonstrate 'that the insurer's conduct is unreasonable and the insurer knows that the conduct is unreasonable, or that it recklessly disregards the fact that the conduct is unreasonable.'" *Enright v. Farm Family Cas. Ins. Co.*, No. 03-4850, 2005 WL 3588485, at *8 (D.N.J. Dec. 29, 2005) (quoting *Pickett*, 621 A.2d at 474).

After all, Atrium could not have issued a decision in or around October 2011 given the 12-month elimination period.  And Onex has not met its burden of showing an issue of fact that any other delay or purported misrepresentation—*i.e.*, in connection with Atrium's May 2012 request or between Atrium's January 2013 representation and the April 2013 Denial Letter—amount to anything more than negligence or mistake.  To hold otherwise would improperly transform the duty owed by insurers to something that it is not.  *See Pickett*, 621 A.2d at 457 ("[A]n insurance company may be liable to a policyholder for bad faith in the context of paying benefits under a policy.  The scope of that duty is not to be equated with simple negligence.").

---

claim fails.  *See id.*; *see also Fuscellaro*, 2011 WL 4549152, at *5 ("[I]f there are material issues of disputed fact as to the underlying benefits claim, an insured cannot maintain a cause of action for bad faith.").  But, to be certain, the Court analyzes whether Onex can sustain a bad-faith delay claim under the standard set forth in *Tucci*.

Accordingly, the Court finds that "[n]o reasonable factfinder, even giving [Onex] the benefit of any favorable inferences arising from this evidence, could find in [Onex]'s favor that [Atrium] had no debatable reason to delay paying [Onex]'s . . . claim." *See Tucci*, 2011 WL 2555379, at *16.

Finally, the Court addresses Onex's discovery request.  Federal Rule of Civil Procedure 56(d) provides that when "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."

Here, Onex has submitted a declaration that it "cannot provide the Court with additional facts in support of its claim for breach of the covenant of good faith and fair dealing" because it needs discovery, including:

> discovery as to whether Atrium acted in good faith when it's [sic] hired agent IRMG (a) retracted its October 21, 2011 statement that it anticipated providing a determination of coverage within 30 days; (b) sought out third-party consultants only after making this representation, and (c) delayed providing a coverage determination for over two years. Plaintiff also has not had the opportunity to obtain discovery with regards to (a) the credentials of the consultants hired by IRMG or (b) whether IRMG made full and accurate disclosure of facts to those consultants after delaying its coverage determination. Plaintiff also has not had the opportunity to obtain discovery with regards to IRMG's delay of 15 months prior to requesting voluminous business documents from Plaintiff having nothing whatsoever to do with Mr. Kovensky's medical condition or Underwriters' engagement of IRMG and/or any oversight of IRMG's work.

(Gutman Decl. ¶ 20).

But the flaw in Onex's bad-faith claim is incurable by such discovery.  Discovery regarding "(a) the credentials of the consultants hired by IRMG or (b) whether IRMG made full

and accurate disclosure of facts to those consultants after delaying its coverage determination" goes to the factual dispute over Onex's underlying benefits claim. Indeed, discovery requests to this effect expose that Onex cannot show a right to summary judgment on its substantive claim—and, therefore, that Onex's underlying claim is fairly debatable. *See Ketzner*, 118 F. App'x at 599 (affirming dismissal of bad-faith claim in insurance context where there was "enough evidence on the record, even without further discovery or consideration of the examinations conducted by [doctors conducting independent medical examination], to conclude that [plaintiff's] disability claim was fairly debatable").[5]

And, as to its delay claim, Onex's request for discovery (*i.e.*, regarding IRMG's "October 21, 2011 statement that it anticipated providing a determination of coverage within 30 days," regarding IRMG's purported delay in "providing a coverage determination for over two years," and regarding "IRMG's delay of 15 months prior to requesting voluminous business documents") is likewise inconsequential. As discussed above, a reasonable juror could find that any purported processing delay was reasonably debatable, and negligence or mistake is not enough to maintain a bad-faith claim in the instant context. In sum, the Court must deny Onex's Rule 56(d) request given New Jersey's requirements to assert a bad-faith cause of action in the insurance context.

### B. The Court Must Strike Onex's Request for Attorneys' Fees

Atrium argues that Onex's complaint has a request for attorneys' fees that "must, as a matter of law, be stricken" under Federal Rule of Civil Procedure 12(f). (Atrium's Mov. Br. at

---

[5] *Cf. N.J. Title Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 11-0630, 2011 WL 6887130, at *7 (D.N.J. Dec. 27, 2011) (dismissing bad-faith claim under Rule 12(b)(6) where "insured's complaint contain[ed] issues of material fact as to the underlying claim" and the denial letter "provided an extensive explanation as to why [p]laintiff's claim did not fall within the coverage," showing "genuine questions regarding whether [p]laintiff's claims fall within the coverage provided").

20).  It cites New Jersey Court Rule 4:42-9 and New Jersey case law, arguing that Onex "is precluded from receiving attorneys' fees on any count." (*Id.*).

In opposition, Onex argues that an "award of attorney's fees pursuant to Rule 4:42-9(a)(6) is discretionary and there is no need for the Court to rule at this premature stage that Plaintiff cannot, under any state of facts, recover attorney's fees at the conclusion of this action." (Onex's Opp. Br. at 18).  Citing New Jersey case law, Onex argues that "in a first-party liability action with facts markedly similar to those alleged in this matter, an award of attorney's fees at the trial court's discretion was deemed entirely proper." (*Id.* at 18–19).

New Jersey Court Rule 4:42-9(a)(6) provides that "[n]o fee for legal services shall be allowed in the taxed costs or otherwise, except . . . (6) [i]n an action upon a liability or indemnity policy of insurance, in favor of a successful claimant." This "Rule does not apply when the 'insured . . . brings direct suit against his insurer to enforce casualty or other direct coverage.'" *Beekman v. Excelsior Ins. Co.*, No. 14-0363, 2014 WL 674042, at *3 (D.N.J. Feb. 21, 2014) (quoting *Auto Lenders Acceptance Corp. v. Gentilini Ford, Inc.*, 854 A.2d 378, 399 (N.J. 2004)).

"Importantly, Rule 4:42-9(a)(6) is narrow in scope and 'should not be extended, beyond its express terms, to permit a counsel fee award to be made to an insured who brings direct suit against his insurer to enforce casualty or other direct coverage.'" *Raritan Bay Fed. Credit v. Cumis Ins. Soc'y, Inc.*, No. 09-1512, 2009 WL 2223049, at *4 (D.N.J. July 23, 2009) (quoting *Eagle Fire Prot. Corp. v. First Indem. of Am. Ins. Co.*, 678 A.2d 699, 708 (N.J. 1996)).

Thus, if a "[p]laintiff is bringing [an] action against [d]efendants to enforce first-party coverage," the "[p]laintiff is not entitled to an award of attorneys' fees incurred in prosecuting its action against [d]efendants." *Beekman*, 2014 WL 674042, at *3; *see also Johnson*, 2010 WL 2560489, at *3 ("The plaintiff herself is seeking payment under the policy in a suit she brought

against her insurer, and as such, is precluded from receiving attorneys' fees on any count. Accordingly, the plaintiff's claim for attorneys' fees will be dismissed.") (citation omitted).

Accordingly, the Court must strike Onex's request for attorneys' fees. *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.").

**V.     Conclusion**

As set forth above, the Court GRANTS Atrium's motion. An appropriate Order accompanies this Opinion.

*/s/ Esther Salas*
**Esther Salas, U.S.D.J.**