**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| ONEX CREDIT PARTNERS, LLC, <br><br> *Plaintiff,* <br><br> v. <br><br> CERTAIN UNDERWRITERS AT LLOYD'S; ATRIUM 5 LTD., an Underwriter at Lloyd's, London individually, and in its capacity as representative Underwriter at Lloyd's, London for certain subscribing Underwriters at Lloyd's, London who subscribed to Policy #RC967307/127, <br><br> *Defendants.* | Civil Action No. 13-5629 <br> (JMV) (MF) <br><br> <u>OPINION</u> |

<u>**John Michael Vazquez, U.S.D.J.**</u>

Plaintiff Onex Credit Partners, LLC ("Onex") filed suit against Defendant Atrium 5 Ltd. ("Atrium") after Atrium denied insurance coverage under a "key man" clause covering Onex's former co-CEO, Stuart Kovensky. Currently pending before the Court is Atrium's motion for summary judgment. D.E. 109. The Court reviewed the parties' submissions[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, Defendant's motion for summary judgment is **DENIED**.

---

[1] The following briefs were submitted in connection with this motion: Defendant Atrium 5 Ltd.'s Memorandum of Points and Authorities in Support of Motion for Summary Judgment, D.E. 109-3, hereinafter "Defendant's Brief" or "Def. Br."; Plaintiff's Memorandum of Law in Opposition to Defendant Atrium 5 Ltd's Motion for Summary Judgment; D.E. 121, hereinafter "Opposition" or "Opp."; Defendant Atrium 5 Ltd.'s Reply Memorandum of Law in Further Support of Motion for Summary Judgment, D.E. 122, hereinafter "Reply Br." or "Reply."

## I. Factual Background & Procedural History

The following facts are taken from the parties' respective statements of material fact and documents annexed thereto.[2] Kovensky is the former co-CEO of Onex, a hedge fund. Plaintiff's SOMF at ¶ 135, Defendant's SOMF at ¶ 1. Onex bought an insurance policy from Certain Underwriters at Lloyd's of London ("Lloyd's)[3] ("the Policy"). *See* D.E. 10, Exhibit A to Amended Complaint. The Policy provides insurance coverage for certain high-ranking corporate officers, including Kovensky, if the officers become disabled. Defendant's SOMF at ¶ 2. Kovensky's coverage is for $5,000,000. On his application, Kovensky indicated that his traveled overseas "for a total of 2-3 [weeks] per year."[4] Policy at 21.

The Policy states that a "Permanent Total Disability Benefit" will be paid under the following circumstances:

> 1. The Insured becomes Permanently and Totally Disabled as defined below as a result of . . .
> > (b) a Sickness which first manifests itself while this benefit is in force and causes Permanent Total Disability to commence within 365 days of a covered Sickness; and
> 2. The Insured satisfies the Elimination Period shown on the Schedule; and
> 3. The Insured is under the regular care of a Physician that is appropriate for the condition causing the disability.

---

[2] Defendant Atrium 5 Ltd.'s Statement of Undisputed Facts in Support of Summary Judgment, D.E. 109-1, hereinafter "Defendant's SOMF"; Plaintiff Onex Credit Partners, LLC's Response to Atrium's Statement of Undisputed Facts and Counterstatement, D.E. 121-1, hereinafter "Plaintiff's SOMF."

[3] Atrium was named in the Amended Complaint in its individual capacity and in its capacity as a representative of Lloyd's. *See* D.E. 9 at 2.

[4] Defendant repeatedly indicates that Kovensky stated in his application he only travelled for two to three weeks per year. *See, e,g,* Def. Br. at 2. This is an inaccurate claim, as the application did not call for all travel but only *overseas* travel.

Policy at 17.  The Elimination Period is twelve months.  *Id.* at 12.

"Permanently and Totally Disabled" occurs when

> [a]s a result of a covered Injury or Sickness, the Insured is permanently and totally unable to perform the substantial and material duties of his or her regular occupation as shown on the Schedule for the entire Elimination Period and is not expected to recover for the remainder of his or her life.  The Insured must also be under the regular care of a Physician that is appropriate for the condition causing the disability.
>
> No benefit will be paid prior to the completion of the Elimination Period.

*Id.*  "Sickness" is defined as follows:

> [A]ny sickness, illness or disease that (1)(a) is diagnosed or treated by a Physician while this policy is in force; and (b) is not a Pre-existing Condition as defined above; or (2) is a Pre-Existing Condition but: (a) is declared on the Application for this Policy; and (b) is not excluded from coverage by name or specific description.

*Id.* at 13.

The Policy also contains an exclusion for "any loss caused by, in whole or in part, or as a result of . . . [a]ny psychosis, neurosis, or neuropsychiatric illness including, but not limited to, any emotional anxiety or depression illness for which any form of psychiatric or psychological therapy is indicated or received."  *Id.*

On February 24, 2011, Onex submitted a notice of claim under the Policy, which stated that Kovensky "suffered an acute aortic dissection[5] on March 3, 2010, while in Vancouver, Canada."  Defendant's SOMF at ¶ 7; Exhibit 2 to the Declaration of Grant E. Ingram in Support of Defendant Atrium 5 Ltd.'s Motion for Summary Judgment, D.E. 109-2, hereinafter "Ingram

---

[5] Aortic dissection "is a serious condition in which the inner layer of the aorta, the large blood vessel branching off he heart, tears.  Blood surges through the tear, causing the inner and middle layers of the aorta to separate (dissect)."  *See* Mayo Clinic, AORTIC DISSECTION, *available at*: https://www.mayoclinic.org/diseases-conditions/aortic-dissection/symptoms-causes/syc-20369496 (last visited July 13, 2018).

Decl." On March 3, 2010, Kovensky had a surgery involving a "Bentall procedure," which included the replacement of "his ascending aorta with a Dacron graft and a replacement of his aortic valve with a prosthetic valve." Defendant's SOMF at ¶ 8.

The notice of claim stated that Kovensky was permanently unable to perform his job as co-CEO. The notice described Kovensky's role as follows:

> Mr. Kovensky is the Co-Chief Executive Officer and co-owner of Onex Credit Partners, LLC. Before his heart event, his work involved 60-70 hour work weeks and extreme stress. . . . After consultation with his doctors, who recommended against his return to work due to the extreme stress involved in his position, Mr. Kovensky nevertheless determined to try to return to his job in a limited capacity, in June 2010. . . . By August 2010, Mr. Kovensky's condition had deteriorated to the point where at times he was unable to work for several days at a time. . . . Even with this more limited workload, Mr. Kovensky has not been able to handle the stress of his position, and continues to experience the symptoms discussed above. . . . Based on the foregoing, Onex Credit Partners, LLC, as owner of the Policy, is now submitting a claim for Mr. Kovensky's permanent and total disability under the Policy.

Ex. 2 to Ingram Decl. at 2-3. The notice added that Kovensky was re-admitted to the hospital thirteen days after his initial surgery "where it was determined that he had fluid built up in and around his heart," returned to the hospital again in April 2010, and underwent more testing in 2010 and 2011. *Id.* at 2. The notice of claim further indicated that "Kovensky has a dissection in the aortic arch that was not repaired" during the Bentall procedure and that "he is at risk of further tearing his aorta." *Id.*

Lloyd's used an independent claims adjuster, International Risk Management Group ("IRMG"), to investigate the claim. Defendant's SOMF at ¶ 14. Ultimately, IRMG notified Onex via letter that Lloyd's denied their claim. *Id.* Citing evidence collected by experts retained by IRMG, the letter concluded with the following:

> The record establishes that Mr. Kovensky is physically capable of performing and is actually performing the substantial and material duties of his occupation at least through May 2012. To the extent that Onex and Mr. Kovensky claim that Mr. Kovensky cannot perform the substantial and material duties of his occupation, such claimed inability is caused in whole or in part, or as a result of psychological issues and/or emotional anxiety regarding his cardiac condition for which her received psychological therapy. Such a claimed loss is specifically excluded from coverage[.]

Ex. 1 to Ingram Decl. at 22.

Additional information concerning the medical evidence and Kovensky's activities following his aortic dissection are discussed below.

Onex filed its Complaint on September 20, 2013, and then filed an Amended Complaint on December 16, 2013. D.E. 1, 9. The Amended Complaint lists two counts for (1) breach of contract; and (2) breach of the covenant of good faith and fair dealing. D.E. 9 at ¶¶ 30-41. Atrium filed a motion to dismiss Count Two, or, in the alternative, for summary judgment, on January 22, 2014, which was granted on September 26, 2014. D.E. 16, 33, 34. Only Count One, breach of contract, remains. *See* D.E. 33, 34. The case was transferred to the undersigned on February 23, 2016. D.E. 91. Atrium filed the instant motion on March 6, 2017, D.E. 109, which Plaintiff opposed, D.E. 121. Defendants filed a reply. D.E. 122.

## II.     Standard of Review

Summary judgment is proper where the moving party "shows that there is no genuine dispute as to any material fact," and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Abraham v. Raso*, 183 F.3d 279, 287 (3d Cir. 1999). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or

unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

### III. Analysis

This matter is based diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).[6] The Court, therefore, reviews the Policy pursuant to the substantive law of the state whose laws govern the action. *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 378 (3d Cir. 1990) (citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)). As an initial matter, the parties appear to assume that New Jersey law applies. Seeing no clear reason to deviate from the parties' assumptions, the Court will apply New Jersey law. *See Manley Toys, Ltd. v. Toys R Us, Inc.*, 2013 WL 244737, at *2 (D.N.J. Jan. 22, 2013) ("Because the parties have argued the viability of the remaining claims as though New Jersey substantive law applies, the Court will assume that to be the case.") (citing *USA Mach. Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir. 1999)).

Defendant essentially makes three arguments in support of its motion for summary judgment: first, that Kovensky is not permanently and totally disabled under the Policy; second, that Kovensky continued to work regularly during the twelve-month elimination period; and third, that Kovensky's symptoms are caused by psychological complications, which are excluded from the Policy. Def. Br. at 27-32; 32-38; 38-45. In its Opposition, Plaintiff argues that neither the mental health exclusion nor the elimination period rule bars coverage. Plaintiff continues that there are conflicting medical opinions on the issue of Kovensky's permanent and total disability, creating a genuine issue of material fact that precludes summary judgment. Opp. at 15-19; 27-40; 19-27.

---

[6] Onex is a limited liability company whose citizenship is determined by the citizenship of its members. *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010). Onex's members are citizens of Delaware, New York, and Canada. *See* D.E. 9 at ¶ 9. Plaintiff refers to Atrium and Lloyd's as "Defendant," and in the Amended Complaint states that Defendant is a foreign corporation, organized under the laws of the United Kingdom. *Id.* at ¶ 12.

The Policy is a contract. To state a claim for breach of contract, a plaintiff must allege (1) the existence of the contract; (2) breach of the contract; (3) damages as a result of the breach; and (4) that the plaintiff performed its own duties under the contract. *Faistl v. Energy Plus Holdings, LLC*, 2012 WL 3535815, at *7 (D.N.J. Sept. 4, 2012). "The appropriateness of granting summary judgment depends on whether the contract terms at issue in this case are questions of contract construction or contract interpretation." *Kaufman v. Provident Life and Cas. Ins. Co.*, 828 F.Supp. 275, 282 (D.N.J. 1992). Construction of a contract is purely a question of law, and thus rests with the Court, as does whether a contract term is clear or ambiguous. *Id.* at 282-283. Interpretation of an ambiguous term is "generally a question of fact." *Id.* at 283.

"The basic principles of law governing insurance policies are well-settled in New Jersey," and the goal of any court enforcing such a policy is to "determine the intent of the parties." *Kachigian v. Berkshire Life Ins. Co. of America*, 2012 WL 762486, at 3 (D.N.J. March 8, 2012). When the terms of an insurance contract are clear "it is the function of a court to enforce it as written and not make a better contract for either of the parties." *Resolution Tr. Corp. v. Fid. & Deposit Co. of Maryland*, 205 F.3d 615, 643 (3d Cir. 2000) (citing *New Jersey v. Signo Trading Int'l, Inc.*, 130 N.J. 51, 63 (1992) (citation and internal quotation marks omitted)). However, when ambiguities in an insurance contract exist, New Jersey law requires that any ambiguities "be resolved in favor of the insured. *Id.* (citing *Pittston Co. Ultramar Am. Ltd. v. Allianz Ins. Co.*, 124 F.3d 508, 520 (3d Cir. 1997)). When there is a dispute as to insurance coverage, the insured bears the burden of establishing coverage, and the insurer bears the burden of establishing the claim is excluded by the policy. *Chemical Leaman Tank Lines, Inc. v. Aetna Cas. And Sur. Co.*, 817 F.Supp. 136, 1143 (D.N.J. 1993) (citing *Hartford Accident & Indem. Co. v. Aetna Life &*

*Casualty Ins. Co.*, 98 N.J. 18, 26 (1984)); *Rosario ex rel. Rosario v. Haywood*, 351 N.J. Super. 521, 529-30 (App. Div. 2002).

### a. Psychiatric Exclusion under the Policy

Because it is an exclusion, Defendant bears the burden of proof. Defendant must show that Plaintiff's claim is barred by the Policy's exclusion for any loss caused by "[a]ny psychosis, neurosis, or neuropsychiatric illness including, but not limited to, any emotional anxiety or depression illness for which any form of psychiatric or psychological therapy is indicated or received." Defendant relies on the record review performed by psychiatrist James High. Defendant also points to the "diagnosis" given by Kovensky's psychologist, Dr. Robert Allan of "Adjustment Disorder with Mixed Anxiety and Depressed Mood" to support their argument that Kovensky's illness is psychological, rather than physical. Def. Br. at 25. Defendant did not have its own expert psychiatrist or psychologist meet with Kovensky.[7]

However, Dr. Allan testified that he *did not* diagnose Kovensky with any psychiatric disorder; instead, he stated that Kovensky's therapy helps to adjust Kovensky to life with his disability. *See* Ex. S to King Cert at 116:2-10; 166:12-20; 276:14-20. Dr. Allan explained that the "diagnosis" Defendant cites was necessary for the relevant insurance reimbursement forms. *Id.* at 22:11-13; 23:8-9. Dr. Allan also testified that no Diagnostic and Statistical Manual ("DSM") diagnosis currently applies to Kovensky.[8] *Id.* at 276:14-20. Dr. Allan indicated that Kovensky does not suffer from a psychiatric impairment that prevents Kovensky from working as co-CEO.

---

[7] Dr. High's report states: "I have had an extensive opportunity to view Mr. Kovensky on video during his deposition, I have not directly examined him nor have I submitted him to psychological testing as I would usually do when assessing and diagnosing someone's mental state." Ex. 92 to Ingram Decl. at 3.

[8] Dr. Allan also stated that the diagnosis cited on the insurance forms is the "mildest diagnosis that's allowed in the DSM." Ex. S to King Decl. at 27:19-20.

*Id.* at 33:6; 9-12.  Ultimately, Dr. Allan stated (reading from his notes): "Stuart [Kovensky] does not have any psychosis, neurosis, neuropsychiatric illness, emotional, anxiety illness or depression illness that causes, underlines or contributes to any cardiac disability from which he may suffer." *Id.* at 116:3-8.  In light of Dr. Allan's testimony, there is a genuine issue of material fact that precludes summary judgment for Defendant as to the psychiatric exclusion.

### b. Permanent & Total Disability under the Policy

Defendant argues that Kovensky is not permanently and totally disabled in light of the medical evidence and Kovensky's activities after the dissection.  To prevail, Defendants must to show that there is no genuine material issue of fact that Onex will not be able to establish Kovensky's permanent and total disability under the Policy. In Onex's claim letter, their general counsel Steven Gutman described Kovensky's duties as co-CEO and co-owner before the dissection as "involve[ing] significant marketing contributions (requiring extensive travel), as well as investment and portfolio management."

Before turning to the evidence, the Court reviews the standards that govern the Policy's language.  The Policy indicates coverage applies if Kovensky "is permanently and totally unable to perform the substantial and material duties of his . . . regular occupation . . . and is not expected to recover for the remained of his . . . life."  Written Policy at 17.  Additionally, Kovensky "must also be under the regular care of a Physician that is appropriate for the condition causing the disability." *Id.*

Here, the Policy uses the word "his" (meaning Kovensky) to modify "regular occupation." The Third Circuit has determined that the use of the modifier "his or her" before "regular occupation" means "that 'regular occupation' is the usual work that *the insured* is actually performing immediately before the onset of disability." *Lasser v. Reliance Standard Life Ins. Co.*,

344 F.3d 381, 386 (emphasis added). Thus, the Court reviews Kovensky's claim in light of his actual, regular duties as co-CEO.

The Policy also requires a permanent disability. Relying on *Bowler v. Fidelity & Cas. Co. of New York*. 53 N.J. 313, 324 (1969), Plaintiff argues that the "permanence" requirement can be met by in indefinite continuance. In *Bowler*, the insurance contract also required a permanent disability, but permanent was not defined in the policy. *Id.* at 321. The court in *Bowler* explained that "[a]n insured's total disability is deemed permanent when it is shown to be in a state of indefinite continuance, i.e. that recovery, even if such a possibility exists, is so far removed that the end of the disability cannot be foreseen." *Id.* at 324. In comparison, the Policy here expressly states that Kovensky must not be expected to recover "for the remainder of his life." Thus, Plaintiff may be correct as to the application of *Bowler* if permanence was not explicitly addressed in the Policy. Nevertheless, because the Policy explicitly and clearly provides the standard for permanence, the Court will apply here.

Defendant argues that the Policy requires Onex to show that Kovensky cannot perform "each and every" of his substantial and material duties, citing to *Kachigian v. Berkshire Life Ins. Co. of America*. 2012 WL 762486, at *3 (D.N.J. March 8, 2012). However, the Policy does not contain the "each and every" language, and the Court will not re-write a better contract for Defendant than it agreed to. Instead, the Court relies on the plain and unambiguous language of the Policy. As Plaintiff indicates, many disability policies use the limiting "each and every" language, *e.g. Bowler*, 53 N.J. at 583, but it does not appear here.

Defendant assails Plaintiff's medical evidence,[9] including that of Kovensky's treating cardiologist, Dr. Allan Schwartz. In June 2010, two months after the dissection, Dr. Ronnie

---

[9] Defendants did not file a *Daubert* motion to exclude any of Plaintiff's expert testimony.

Hershman indicated that Kovensky was "unable to work a full load," and was "unable to travel." Plaintiff's SOMF at ¶ 218. As to Dr. Schwartz, he is the Chief of Cardiology at Columbia University Medical Center in New York. Plaintiff's SOMF at ¶ 205. Dr. Schwartz wrote in his Attending Physician Statement ("APS") dated December 2010 that Kovensky should limit his stress, not travel for work, or do any heavy lifting. *Id.* at ¶¶ 219-221; Ex. 4 to Ingram Cert. On April 26, 2011, Dr. Schwartz indicated on his APS that Kovensky was totally disabled from March 2011 to "indef." (presumably meaning indefinitely), and that Kovensky was partially disabled from March 3, 2010 to February, 2011. Ex. 4 to Ingram Cert. Under "prognosis," Dr. Schwartz wrote that "[b]ecause of continuing dissection [Kovensky's] condition could worsen but not expected to improve." *Id.* Dr. Schwartz again wrote in February 10, 2012 APS that Kovensky was "indefinitely" disabled, that "there [was] no treatment available," and that Kovensky was experiencing "frequent episodes of pain w/ remaining dissection in the aortic arch." Ex. 5 to Ingram Cert.

The parties disagree about the impact of Dr. Schwartz's records and deposition testimony. Plaintiff states repeatedly that Dr. Schwartz does not consider Kovensky "physically capable of performing the material and substantial duties of his position as co-CEO of Onex." Plaintiff's SOMF at ¶ 278. Dr. Schwartz testified that, based on his treatment of Kovensky over time, he believed that Kovensky was disabled. *See, e.g.*, Ex. J to the Declaration of David R. King, D.E. 121-2, hereinafter "King Decl." at 189: 6-12.[10] Dr. Schwartz's testimony creates a genuine issue of material fact that precludes summary judgment. Of course, subject to any meritorious evidential arguments made by Plaintiff, Defendant can cross-examine Dr. Schwartz on the factual issues

---

[10] Defendant did not include this page of Dr. Schwartz's deposition in its "excerpts" attached to the Ingram Declaration.

which Defendant believes undercut the physician's view, including Dr. Schwartz's previous prognosis of "indefinitely," Kovensky's pericarditis, and Dr. Schwartz's general advice to patients to start out with part-time work and increase to full time. At the same time, Dr. Schwartz will be able to explain that patients progress differently.

### c. Kovensky's Work History after the Dissection

Defendant further argues that because Kovensky continued to work during the elimination period (and thereafter), he was not disabled under the Policy. As proof that Kovensky was working during the elimination period, Defendant points to, among other things, Kovensky's email traffic and the amount of money he earned from Onex. As to the emails, while they may be probative of the time that Kovensky worked, they do not definitively demonstrate that he performed the substantial and material duties of his regular occupation. As to Kovenksy's compensation, he had an ownership interest in Onex that entitled him to a percentage of Onex's profits.[11]  Plaintiff's SOMF at ¶ 115.  Defendant fails to demonstrate that the amounts Kovensky earned reflect his actual time working. The Policy pertains to whether Kovensky could work in his position as co-CEO, not whether he could earn money from his ownership interest. *Cf. Kaufman*, 828 F.Supp. at 286-87 (noting that a disability insurance policy insures against loss of capacity to work, not loss of income).

Moreover, Plaintiff has submitted sufficient evidence precluding summary judgment.  In 2010, after his heart surgery, Kovensky attempted to work five hours a day for three days a week. Plaintiff's SOMF at ¶ 206.  Kovensky was unable to continue working four to five hours a day, and in August 2010 he had to cease working for several days at a time. Ex. 2 to Ingram Cert. at 3.

---

[11] Defendant asserts that Kovensky made $1,281,000 in 2010, $811,983 in 2011, and $778,651 "in the twelve month period ending February 29, 2012." Defendants' SOMF at ¶ 115.  Kovensky sold his remaining interest in Onex in December 2012. *Id.* at ¶ 116.

During this time, Kovensky ceased working on Onex's marketing and tried to concentrate instead on the firm's investment portfolio, but even this was too strenuous for him. In 2011, he was working ten to fifteen hours per month, Plaintiff's SOMF at ¶¶ 208-209, and he currently works at most two hours a week for Onex, while also teaching a class at New York University for one semester each year (or, for a half a semester, two times a year). *Id.* at ¶¶ 212-213.

The cases cited by Defendant do not require a different result. For example, Defendant relies heavily on *Kaufman*, in which the plaintiff was an optometrist and a part-owner of two related businesses. *See* Def. Br. at 34-37; Reply at 8-10; *Kaufman*, 838 F.Supp. at 276. The plaintiff's duties included both management of the businesses and working as an optometrist. *Id.* After he was diagnosed with thyroid cancer and underwent treatment, he submitted a claim for permanent disability. *Id.* at 278-79. The court granted summary judgment in favor of the insurer because the plaintiff admitted that his illness affected his job duties "a little bit," and that he was able to work in his management role daily. *Id.* at 286. Plaintiff was also able to practice as an optometrist but decided not to so that he could collect disability. *Id.* Moreover, although the plaintiff had suffered a loss of income, the *Kaufman* court determined the loss was due to "independent issues affecting his corporations" rather than the plaintiff's illness. *Id.* Here, by comparison, Kovensky has not testified that his aortic dissection only impacted his job duties to a minimal degree nor has he admitted that he could continue with his regular work co-CEO but decided not to so that Plaintiff could collect on the Policy.

## IV.    Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is denied. Defendant points to evidence which, if admissible, may help its cause at trial. But there is also sufficient evidence to the contrary which precludes Defendant's motion. An appropriate Order accompanies this Opinion.

Dated: July 16, 2018

John Michael Vazquez, U.S.D.J.